[Cite as *State v. Rohde*, 2014-Ohio-5580.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

STATE OF OHIO

      Plaintiff-Appellee

v.

STEVEN M. ROHDE

      Defendant-Appellant

Appellate Case No.    26087

Trial Court Case No.   2013-CR-173

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

# O P I N I O N

Rendered on the 19th day of December, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by APRIL F. CAMPBELL, Atty. Reg. No. 0089541, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

PETER R. CERTO, JR., Atty. Reg. No. 0018880, One South Main Street, Suite 1590, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1}　Defendant-appellant, Steven M. Rohde, appeals from his conviction in the Montgomery County Court of Common Pleas for one count of sexual imposition following a jury trial.　Specifically, Rohde claims: (1) the trial court lacked subject-matter jurisdiction to hear his case due to the indictment being filed after the grand jury had been discharged; (2) his constitutional right to effectively cross-examine the victim was violated when the trial court issued a discovery sanction that prohibited the defense from impeaching the victim with a poem the victim allegedly wrote; and (3) his conviction was not supported by sufficient corroborating evidence and was against the manifest weight of the evidence.　For the reasons outlined below, we will affirm Rohde's conviction.

**Facts and Course of Proceedings**

{¶ 2}　On May 10, 2013, Rohde was indicted on two counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), as well as eight counts of sexual imposition in violation of R.C. 2907.06(A)(4).　Rohde pled not guilty to all the charges on May 14, 2013. Five months later, on October 25, 2013, Rohde filed a motion to quash the indictment on grounds that the trial court lacked subject-matter jurisdiction, arguing his indictment was improperly filed after the grand jury had been discharged.　The indictment indicates that the grand jury's term began on January 1, 2013, but the record does not reflect when the grand jury was discharged. See Crim.R. 6(G).

{¶ 3}　On December 3, 2013, the trial court issued its decision overruling Rohde's

motion to quash on grounds that it was untimely per Crim.R. 12. The trial court also found no evidence of impropriety with regard to the indictment's filing. The matter then proceeded toward a jury trial.

{¶ 4} Prior to trial, the State dismissed five of the eight sexual imposition charges against Rohde, thereby leaving two counts of unlawful sexual conduct with a minor and three counts of sexual imposition to be tried to the jury. Following trial, the jury found Rohde guilty of one count of sexual imposition and returned not guilty verdicts on the other four counts.

{¶ 5} Rohde's conviction stemmed from allegations that he engaged in sexual contact with a minor, S.L., who is the former best friend of his teenage daughter, D.R. The alleged abuse occurred during a sleepover at Rohde's residence when S.L. was 14 years old. There is no dispute that S.L. slept over at Rohde's residence often. In addition, the testimony of S.L., D.R., their friends, A.W., A.H. and K.H., as well as Rohde's wife, firmly established that it was a common occurrence during the sleepovers for the girls to watch movies on a pull-out bed in a television room before falling asleep. Their testimony also established that Rohde would, at times, join the girls and watch movies with them.

{¶ 6} A.W. and A.H. testified that Rohde was less likely to join them if S.L. was not around. A.W. and A.H. also testified that when Rohde was present he would sit next to S.L. on the pull-out bed and that he would sometimes put his arm around her, try to cuddle with her, or would hold her "like a teddy bear." Trans. Vol. II (Dec. 19, 2013), p. 376. A.H. also testified that Rohde would sometimes sleep with them on the pull-out bed and that when she would wake up in the morning she would oftentimes see Rohde lying next to S.L. In addition, A.H. testified that Rohde called S.L. his girlfriend, said that he was going to take her on dates, and at times

acted as if he wanted to hold her hand.

{¶ 7} While S.L. claimed there were several incidents of abuse during the sleepovers at Rohde's residence, the single count of sexual imposition for which Rohde was convicted concerned a sleepover during the winter break of S.L.'s eighth-grade year in late December 2011. With regard to that incident, S.L. testified that she, Rohde, and D.R. watched a movie on the pull-out bed together, and after the movie ended, they all laid down to go to sleep. S.L. then testified that Rohde moved closer to her and caressed her sides and breasts underneath her bra and put his hand inside her underwear near her vagina. As Rohde was doing this, S.L. testified that she started to cry. According to S.L., Rohde then stopped touching her, got up from where he was laying, sat on the side of the bed, and started petting her hair. At that point, S.L. testified that D.R. woke up and saw her crying.

{¶ 8} After that incident, S.L. testified that beginning in January 2012, she continued to attend sleepovers at Rohde's residence, but that she asked D.R. if they could sleep in D.R.'s bedroom on an air mattress as opposed to on the pull-out bed in the television room. Following the new sleeping arrangement, S.L. testified that Rohde did not touch her inappropriately again.

{¶ 9} S.L. also testified that, during her eighth-grade year, she told a few of her peers, including A.W. and A.H., about what happened with her and Rohde. At trial, both A.W. and A.H. confirmed that S.L. had a conversation with them about Rohde and testified that they encouraged S.L. to tell her parents what she had told them. After sometime, S.L. disclosed the abuse to her mother on December 16, 2012. S.L. explained that the disclosure came after Rohde sent a text message to her cell phone on December 14, 2012. In the text message, S.L. claimed that Rohde asked her "what are you doing tonight." Trial Trans. Vol. II (Dec. 19, 2013), p. 315.

S.L. testified that the message upset her because it reminded her of everything that happened the year before. As a result, she decided to disclose the abuse to her mother two days later.

{¶ 10} Upon learning of the abuse, S.L.'s mother went to the school guidance counselor with S.L., and then contacted the police. After learning of the allegations, Detective Robert Brazel of the Vandalia Police Department testified that he obtained Rohde's telephone records and confirmed that Rohde contacted S.L.'s cell phone on December 14, 2012, and on other occasions as well.

{¶ 11} In addition, the State called expert witness Dr. Joyce Miceli, a psychologist, who testified that it is common for abused children not to immediately recognize abusive touching as inappropriate and to delay disclosing the abuse in order to keep a sense of normalcy. S.L. testified that she continued spending the night at Rohde's house after the abuse because she did not want anything to seem out of the ordinary and did not want to ruin the relationship between her and D.R. or the relationships within the Rohde family.

{¶ 12} At the close of the State's case, Rohde orally moved for an acquittal of all five charges, which the trial court overruled. In his defense, Rohde presented testimony from his wife who confirmed that S.L. slept over during winter break of December 2011, but denied Rohde ever sleeping in the television room with the girls. D.R. also testified on Rohde's behalf, and stated that she remembered waking up to S.L. crying at 2:00 a.m. during one of their sleepovers, but denied that her father was in the room at that time. D.R. also testified that she and S.L. began to sleep in her bedroom as opposed to the television room in 2012.

{¶ 13} Rohde also presented testimony from his eldest 21-year-old daughter, and a friend of hers; and D.R.'s friend, K.H. Each of these witnesses denied seeing anything

inappropriate between Rohde and S.L. Despite this evidence, the jury found Rohde guilty of one count of sexual imposition.

{¶ 14} After the guilty verdict, on January 3, 2014, Rohde filed three motions–a motion for acquittal, motion for new trial, and motion to arrest judgment. The motion for acquittal was overruled at Rohde's sentencing hearing.

{¶ 15} In the motion for new trial, Rohde argued that the trial court improperly prohibited the defense from questioning S.L. about a poem she allegedly wrote and posted on the Internet. During cross-examination, S.L. testified that she had a happy home life, and in an attempt to impeach that testimony, defense counsel began to ask S.L. whether she was familiar with a passage from the poem, which discussed the author's unhappiness with her home life and parents. The State objected to the defense questioning S.L. about the poem primarily on grounds that the poem was never disclosed during discovery.

{¶ 16} The defense conceded at trial that it did not disclose the poem to the State, but argued it was not obligated to disclose the poem because it was impeachment evidence. The trial court, however, ruled in favor of the State and prevented the defense from questioning S.L. about the poem. Thereafter, the defense proffered the poem as evidence and then filed the motion for new trial arguing that the trial court's ruling concerning the poem was made in error. The trial court overruled the motion for new trial finding that it appropriately prohibited the defense from using the poem due to the defense's discovery violation.

{¶ 17} In the motion to arrest judgment, Rohde raised the same argument as in his pretrial motion to quash the indictment, which argued that the trial court did not have subject-matter jurisdiction to hear his case due to the indictment being filed ten days after the

grand jury was discharged. The trial court overruled this motion as well.

{¶ 18} After the trial court ruled on Rohde's three post-trial motions, on January 21, 2014, the trial court sentenced Rohde to various community control sanctions not to exceed five years. Among the sanctions, Rohde was ordered to serve a 20-day jail term, which was stayed pending this appeal. Rohde now appeals from his conviction for sexual imposition, raising four assignments of error for review.

**First Assignment of Error**

{¶ 19} Rohde's First Assignment of Error is as follows:

THE TRIAL COURT DID NOT HAVE JURISDICTION TO HEAR THE CASE AND ERRED IN OVERRULING DEFENDANT'S MOTION TO QUASH THE INDICTMENT WHEN THE INDICTMENT WAS FILED AFTER THE GRAND JURY TERM EXPIRED.

{¶ 20} Under this assignment of error, Rohde argues the trial court erred in overruling his pretrial motion to quash the indictment as untimely. In support of this claim, Rohde contends his motion presented a jurisdictional defect, which could be raised at any time, and was not subject to the time restraints for filing pretrial motions set forth in Crim.R. 12. To that end, Rohde claims his indictment was not properly filed in that it was filed with the clerk of courts after the grand jury's term had expired. According to Rohde, this alleged error left the trial court without subject-matter jurisdiction to hear his case.

{¶ 21} Because subject-matter jurisdiction involves a trial court's power to hear a case, it may be raised as an issue at any time. *State v. Mbodji*, 129 Ohio St.3d 325, 2011-Ohio-2880,

951 N.E.2d 1025, ¶ 10. This principle is reflected in Crim.R. 12(C)(2), which governs pretrial motions. The rule states, in pertinent part that:

> Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue. The following must be raised before trial:
>
> * * *
>
> (2) Defenses and objections based on defects in the indictment, information, or complaint (*other than failure to show jurisdiction in the court or to charge an offense, which objections shall be noticed by the court at any time during the pendency of the proceeding*); * * *

(Emphasis added.) Crim.R. 12(C)(2).

{¶ 22} Therefore, absent a jurisdictional question, an attack on the validity of an indictment via a pretrial motion should be brought before the trial court as provided by Crim. R. 12. *State v. Jones*, 6th Dist. Lucas No. L-09-1181, 2009-Ohio-6498, ¶ 15. Specifically, Crim.R. 12(D) provides that "[a]ll pretrial motions except as provided in Crim.R. 7(E) and 16(M) shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier."

{¶ 23} Here, Rohde filed his motion to quash on October 25, 2013, approximately 150 days after his arraignment. Accordingly, the motion was not timely filed under Crim.R. 12(D). However, as previously noted, Rohde contends that his claim, i.e., that his indictment should have been quashed due to being filed after the grand jury was discharged, is jurisdictional in nature and not subject to the time restraints in Crim.R. 12.

**{¶ 24}** It is well-established that a trial court obtains subject-matter jurisdiction over a case upon a valid indictment being returned and filed with the trial court. *State v. Pillow*, 2d Dist. Greene No. 2010-CA-71, 2011-Ohio-4294, ¶ 18; *see also State v. Leigh*, 2d Dist. Montgomery No. 18294, 2001 WL 1345957, *2 (Nov. 2, 2001). However, even if we found that Rohde's motion to quash was timely filed as a challenge to the trial court's jurisdiction, the trial court still did not err in overruling the motion to quash his indictment.

**{¶ 25}** The return and filing process for indictments is outlined in Crim.R. 6(F) and R.C. 2939.22. These provisions require the indictment to be returned by the foreman to the trial court and then filed with the clerk who must endorse the date of filing. While a grand jury's service ends after it is discharged, *see* Crim.R. 6(G) and *State v. Schwab*, 109 Ohio St. 532, 535-536, 143 N.E. 29 (1924), there is no requirement in Crim.R. 6 or R.C. 2939.22 that the indictment must be filed prior to the discharge or that the filing requirement is bestowed upon the grand jury.

**{¶ 26}** Here, the record establishes the grand jury foreman signed and returned Rohde's indictment, and that the indictment was thereafter filed on May 10, 2013. The grand jury's term began on January 1, 2013, but the record does not reflect whether its term was extended beyond four months. It is possible, as Rohde argues, that the indictment was filed after the grand jury was discharged. However, as noted above, there is nothing in Crim.R. 6 or R.C. 2939.22 that prohibits filing a timely-signed indictment after the grand jury's discharge. There is also nothing in the record indicating that the grand jury's decision to indict Rohde was made after it was discharged and relieved of its authority to do so. Therefore, based on the record and the aforementioned rules governing grand juries, we find no defect with respect to the indictment's filing and conclude that the subject-matter jurisdiction of the trial court was properly invoked.

Accordingly, the trial court did not err in overruling Rohde's motion to quash the indictment.

**{¶ 27}** Rohde's First Assignment of Error is overruled.

### Second Assignment of Error

**{¶ 28}** Rohde's Second Assignment of Error states as follows:

THE TRIAL COURT ERRED IN RESTRICTING CROSS[-]EXAMINATION USING DEFENDANT'S PROFFERED EXHIBIT A ON THE BASIS THAT IT WAS NOT PROVIDED DURING DISCOVERY.

**{¶ 29}** Under this assignment of error, Rohde contends the trial court erred by prohibiting him from impeaching S.L.'s testimony using a poem that she allegedly wrote and posted on the Internet. The poem, which the defense proffered on the record, discusses the author's unhappiness with her home life and parents. According to Rohde, his right to effectively cross-examine S.L. under the Confrontation Clause of the United States Constitution was violated when the trial court prohibited defense counsel from questioning her about the poem as the result of a discovery sanction for failing to disclose the poem to the State.

**{¶ 30}** Crim.R. 16 governs discovery in criminal prosecutions. By its terms, the purpose of Crim.R. 16 is "to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large." Crim.R. 16(A). The Supreme Court of Ohio has stated that the overall objective of the discovery rules is " 'is to remove the element of gamesmanship from a trial' " and "to prevent surprise and the secreting of evidence favorable to one party." (Citation omitted.) *Lakewood v. Papadelis*,

32 Ohio St.3d 1, 3, 511 N.E.2d 1138 (1987), quoting *State v. Howard*, 56 Ohio St.2d 328, 333, 383 N.E.2d 912 (1978). "Compliance with Crim.R. 16 eliminates, at least to some degree, trial by ambush[.]" (Citation omitted.) *State v. Arnold*, 189 Ohio App.3d 507, 2010-Ohio-5379, 939 N.E.2d 218, ¶ 75 (2d Dist.).

**{¶ 31}** Crim.R. 16(L)(1) provides that: "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."

**{¶ 32}** "Sanctions for a Crim.R. 16 discovery violation are within the discretion of the trial court and should be imposed equally, without regard to the status of the offending party." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 20. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." (Citation omitted.) *Id*. at ¶ 34. A decision is unreasonable if a trial court does not engage in a sound reasoning process. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 33}** "[A]ny infringement on a defendant's constitutional rights caused by the [discovery] sanction must be afforded great weight." *Lakewood*, 32 Ohio St.3d at 5, 511 N.E.2d 1138. Consequently, when imposing a discovery sanction, "a trial court must inquire into the circumstances surrounding a discovery violation, must balance the competing interests, and 'must impose the least severe sanction that is consistent with the purpose of the rules of discovery.' "

(Emphasis deleted.)  *Darmond* at ¶ 21, quoting *Lakewood* at 5 and paragraph two of the syllabus.

{¶ 34}  In this case, the trial court determined that Rohde violated the rules of discovery when it failed to disclose the poem allegedly written by S.L. to the State and thus prohibited Rohde from using the poem to impeach S.L.'s testimony that she had a happy home life.  We note there is nothing in Crim.R. 16 that requires a party to disclose a witness's prior inconsistent statement that is to be used as impeachment evidence.  *State v. Pierce*, 2011-Ohio-4873, 968 N.E.2d 1019, ¶ 76 (2d Dist.)   However, the Local Rules of Practice and Procedure for the General Division of the Montgomery County Court of Common Pleas call for reciprocal discovery of all witness statements.

{¶ 35}  Mont. Co. C.P.R. 3.03 I (D)(2)(4) provides that: "An information packet shall be delivered to the defendant's counsel upon the execution of a Demand and Receipt for the information packet.  The information packet shall contain * * * (b) All witness statements." (Emphasis added.)   Section (D)(6) of the rule then states that: "The execution of a demand and receipt for an information packet and the acceptance of an information packet by counsel for the defendant *automatically obligates the defendant to provide to the prosecutor reciprocal discovery as set forth in Section I (D) (2) (4) of this Local Rule and as required by Rule 16 of the Ohio Rules of Criminal Procedure.*"   (Emphasis added.)   Mont. Co. C.P.R. 3.03 I (D)(6). Accordingly, upon accepting the information packet from the State, the defense has the reciprocal duty to provide the State with all witness statements.

{¶ 36}  In *State v. Flanigan*, 2d Dist. Montgomery No. 21460, 2007-Ohio-3158, this court held that when defense counsel makes a request for discovery and acknowledges by his signature that he will reciprocate with full discovery under both Crim.R. 16 and the court's local

rules, "that defense counsel waive[s] his right to challenge [the witness's] inconsistent statement with a document that it failed to supply the [S]tate in violation of the local rules." *Id.* at ¶ 70; *see also Pierce* at ¶ 76 (finding that a discovery sanction "might have been appropriate if there were a case-management plan requiring reciprocal discovery of witness statements").

**{¶ 37}** Here, Rohde's defense counsel signed a request for discovery under Crim.R. 16(B) acknowledging that he received the information packet from the State and that he had a reciprocal duty of disclosure pursuant to Crim.R. 16(H) and the Local Court Management Plan. *See* Request for Discovery (May 17, 2013), Montgomery County Common Pleas Court Case No. 2013 CR 00173, Docket No. 12, p. 1. Despite agreeing to a reciprocal duty of disclosure, Rohde's counsel conceded at trial that he did not provide the State with the poem allegedly written by S.L.

**{¶ 38}** Assuming S.L.'s poem qualifies as a witness statement, the defense arguably violated the local rules of discovery by failing to fulfill its reciprocal duty to disclose all witness statements. However, we need not specifically address whether S.L.'s poem qualifies as a witness statement under the local rules, because the extent of Rohde's cross-examination of S.L. was within the sound discretion of the trial court, and the court's decision prohibiting the defense from using the poem to impeach S.L. was not an abuse of its discretion under the circumstances of this case. *See State v. Green*, 66 Ohio St.3d 141, 147, 609 N.E.2d 1253 (1993) (finding that the " 'extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court' " and that "the right of cross-examination includes the right to impeach a witness's credibility"), quoting *Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931).

**{¶ 39}** The Confrontation Clause entitles a defendant to engage in an effective cross-examination of his or her accusers, but it does not guarantee a "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). Rather, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on * * * cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Additionally, " '[a] trial court has the discretion to determine whether two statements are inconsistent and whether any differences between prior statements and trial testimony are material inconsistencies.' " *State v. Raia*, 11th Dist. Portage No. 2013-P-0020, 2014-Ohio-2707, ¶ 26, quoting *State v. Freeman*, 7th Dist. Jefferson No. 07 JE 5, 2008-Ohio-2925, ¶ 53.

**{¶ 40}** Here, the trial court questioned whether S.L.'s poem was relevant and truly inconsistent with the testimony provided at trial. The record indicates the poem was only marginally relevant, as its contents do not prove or disprove any of the elements of the sexual offenses for which Rohde was charged. Rather the poem concerns the collateral issue of S.L.'s home life and was intended to be used as a prior inconsistent statement to attack S.L.'s credibility. We note, "[i]t is not error for a trial court to prohibit extrinsic evidence of a prior inconsistent statement where the statement is relevant to a collateral issue that is being tried, and the statement is pertinent only with respect to the credibility of the witness." (Citation omitted.) *State v. Markland*, 5th Dist. Stark No. 2001CA00356, 2002-Ohio-5104, ¶ 42.

**{¶ 41}** Furthermore, it is questionable whether S.L.'s poem accurately reflects her

feelings regarding her home life. Poems are not necessarily based in fact; therefore, S.L.'s poem could have been a work of fiction or merely represented how she felt during a short period of time. Because it was unknown when and why S.L. wrote the poem, or if she wrote it at all, it is dubious at best as to whether the poem truly contradicts her testimony regarding her home life. While some of this information could have been clarified through questioning at trial, it was within the trial court's discretion whether to permit such questioning during cross-examination. We find that it was not unreasonable for the trial court to prohibit questioning regarding the poem. Even if S.L. had testified that she wrote the poem and was unhappy with her home life when she wrote it, this does not necessarily mean that her prior testimony regarding her home life was false and does not affect her credibility with respect to the allegations she made against Rohde.

{¶ 42} For the foregoing reasons, we conclude the trial court did not abuse its discretion in prohibiting Rohde's counsel from using the poem to impeach S.L. during cross-examination. Accordingly, Rohde's Second Assignment of Error is overruled.

**Third and Fourth Assignments of Error**

{¶ 43} For purposes of convenience, we will address Rohde's Third and Fourth Assignments of Error together. They are as follows:

III. THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT/DEFENDANT'S MOTION FOR ACQUITTAL WHEN THE VICTIM'S TESTIMONY WAS UNSUPPORTED BY OTHER EVIDENCE.

IV.    THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF

THE EVIDENCE.

**{¶ 44}**   Under the foregoing assignments of error, Rohde challenges the legal sufficiency and manifest weight of the evidence.   Specifically Rohde argues that S.L.'s testimony was insufficient to support a conviction for sexual imposition because her testimony regarding the alleged abuse was unsupported by any other corroborating evidence.   Rohde also argues his conviction was against the manifest weight of the evidence because S.L.'s testimony regarding the abuse was refuted by the testimony of D.R. and his wife.

**{¶ 45}**   As a preliminary matter, we note that "[a] challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence."   *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 69.   "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law."   *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

**{¶ 46}**   "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt."   (Citations omitted.)   *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997).   "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact."   (Citations omitted.)   *Id*.

**{¶ 47}**   In contrast, "[a] weight of the evidence argument challenges the believability of

the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013 CA 61, 2013 CA 62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶ 14.

{¶ 48} "The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve." *State v. Hammad*, 2d Dist. Montgomery No. 26057, 2014-Ohio-3638, ¶ 13, citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). "This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way." (Citation omitted.) *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510, *4 (Oct. 24, 1997).

{¶ 49} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency."

(Citation omitted.)  *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11.

As a result, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency."  (Citations omitted.)  *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 50}  Rohde was convicted of one count of sexual imposition in violation of R.C. 2907.06(A)(4).  This statute provides, in pertinent part, that: "No person shall have sexual contact with another, not the spouse of the offender * * * when any of the following applies: * * * (4) The other person * * * is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of such person, and the offender is at least eighteen years of age and four or more years older than such other person."  R.C. 2907.06(A)(4).

{¶ 51}  "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."  R.C. 2907.01.  " '[T]here is no requirement that there be direct testimony regarding sexual arousal or gratification.' "  *State v. Clark*, 2d Dist. Clark No. 2013 CA 52, 2014-Ohio-855,  ¶ 12, quoting *State v. Gesell*, 12th Dist. Butler No. CA2005-08-367, 2006-Ohio-3621, ¶ 25.  The trier of fact may infer from the evidence presented at trial whether the purpose of the touching was for the defendant's sexual arousal or gratification.  *Id*.

{¶ 52}  After a thorough review of the record, we conclude that S.L.'s trial testimony indicates that Rohde engaged in sexual contact with her in violation of R.C. 2907.06(A)(4). However, section (B) of the statute provides that: "No person shall be convicted of [Sexual Imposition] solely upon the victim's testimony unsupported by other evidence."  R.C.

2907.06(B). As a result, Rohde argues that the corroboration required by R.C. 2907.06(B) is not present in this case because there is no other evidence supporting S.L.'s testimony.

{¶ 53} In *State v. Economo*, 76 Ohio St.3d 56, 666 N.E.2d 225 (1996), "[t]he Supreme Court of Ohio stressed long ago that '[t]he corroborating evidence necessary to satisfy R.C. 2907.06(B) need not be independently sufficient to convict the accused, and it need not go to every essential element of the crime charged. Slight circumstances or evidence which tends to support the victim's testimony is satisfactory.' " *State v. Shah*, 2d Dist. Montgomery No. 25855, 2014-Ohio-1449, ¶ 49, quoting *Economo* at syllabus. In *Economo*, the only evidence corroborating any element of sexual imposition was that the alleged victim promptly reported the incident to the authorities, appeared to be upset, and did not want to be alone with the alleged perpetrator of the offense. These slight circumstances which tended to support the victim's testimony were deemed to constitute sufficient corroboration. *Economo* at 60.

{¶ 54} Here, we find that there is sufficient other evidence that tends to support and corroborate S.L.'s testimony regarding the abuse. Various witnesses, including A.W., A.H., D.R. and Rohde's wife, testified that sleepovers at Rohde's residence were common and that during these sleepovers, the girls, including S.L., would watch movies on a pull-out bed in the television room. These witnesses also testified that Rohde would sometimes join the girls in watching movies, and A.W. and A.H. testified that he would lay with them on the pull-out bed. A.H. further testified that Rohde would sometimes sleep on the pull-out bed with them and that she would see him lying next to S.L. the next morning. Rohde's wife also confirmed that S.L. slept over at their house during winter break of December 2011. All of this testimony evidences Rohde's opportunity to commit the abuse in the manner S.L. alleged it occurred.

**{¶ 55}** Most importantly, Rohde's daughter testified that she once witnessed S.L. crying at 2:00 a.m. during a sleepover in the television room and indicated that it was a memorable moment because it was one of the only times that she had seen S.L. cry. Rohde's daughter also confirmed that she and S.L. began to sleep in her room as opposed to the television room in 2012. This testimony supports S.L's version of the December 2011 incident and also corroborates S.L.'s testimony that she did not thereafter sleep on the pull-out bed in the television room.

**{¶ 56}** We also note that S.L.'s reasons for hiding the abuse and delaying its disclosure are corroborated by the testimony of expert witness Dr. Joyce Miceli. There was also evidence presented through the testimony of Detective Brazel that Rohde sent a text message to S.L. as she alleged, as well as on a variety of other dates.

**{¶ 57}** Rohde contends that D.R.'s testimony that he was not in the room when S.L. was crying and his wife's testimony that he never slept in the television room with the girls refutes S.L.'s testimony and renders his conviction against the manifest weight of the evidence. We disagree, as the decision as to what extent to credit the testimony of D.R. and Rohde's wife "is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). The fact that the jury chose to believe S.L.'s account of events over the account given by D.R. and Rohde's wife does not render his conviction as being against the manifest weight of the evidence.

**{¶ 58}** Based upon the testimony presented at trial, we conclude that Rohde's conviction for one count of sexual imposition is not against the manifest weight of the evidence and is necessarily supported by sufficient evidence. Accordingly, his Third and Fourth Assignments of Error are overruled.

## Conclusion

{¶ 59}  Having overruled all four of Rohde's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., concurs.

DONOVAN, J., concurs in judgment only.


Copies mailed to:

Mathias H. Heck
April F. Campbell
Peter R. Certo, Jr.
Hon. Timothy N. O'Connell