[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Glenn*, Slip Opinion No. 2021-Ohio-3369.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-3369

THE STATE OF OHIO, APPELLEE, *v*. GLENN, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Glenn*, Slip Opinion No. 2021-Ohio-3369.]**

*Criminal law—R.C. 2505.02—Crim.R. 16—Discovery—Final, appealable orders—Trial court's order for defense counsel to prepare and disclose summaries of defense-witness statements did not satisfy the requirements of R.C. 2505.02(B)(4) for being a final, appealable order—Court of appeals' judgment affirmed.*

(No. 2020-0338—Submitted April 13, 2021—Decided September 28, 2021.)

APPEAL from the Court of Appeals for Montgomery County, No. 28736.

_____

**DEWINE, J.**

{¶ 1} This case is about the timing of an appeal. Samuel Glenn is set to be tried on a sexual-battery charge. He claims to have an alibi—and the judge presiding over the case has ordered Glenn's attorney to provide information to the prosecution about what Glenn's alibi witnesses intend to say at trial. Glenn asserts

that the judge has made a mistake; he contends that he shouldn't have to turn over the information because it is protected from disclosure by the attorney-work-product doctrine. The question before us is when can Glenn challenge the trial judge's decision: can he appeal now, or does he need to wait until the end of his case? For reasons that we will explain, we conclude that Glenn must wait until the end of his case.

## I. The trial court's discovery order

{¶ 2} Glenn is a high-school teacher. He was indicted on allegations that he had engaged in sexual conduct with one of his students at his apartment. During the pretrial phase of the case, Glenn's attorney filed a notice of alibi and provided a list of defense witnesses to the prosecution. As later amended, the notice listed three locations where Glenn claimed to have been at the time that the incident was alleged to have occurred and identified ten people who he says were with him at one point or another that night. The state filed a motion to compel discovery, asking the trial court to order defense counsel to produce witness statements and investigative reports regarding the expected testimony of Glenn's witnesses. In response, Glenn's attorney said that he did not have any written or recorded witness statements.

{¶ 3} The state later filed a supplemental motion to compel discovery, again requesting "[w]itness statements and/or reports summarizing proposed testimony of defense witnesses." The state was most interested in finding out the expected testimony of Glenn's ex-girlfriend, one of the alibi witnesses. The motion explained that defense counsel had informed the prosecutor that Glenn's ex-girlfriend would testify that she had been with Glenn for the entire night of the alleged crime. The state contended that this testimony would directly conflict with that of the victim, who claimed to have been assaulted by Glenn at his apartment the same night.

**{¶ 4}** According to the state, a detective attempted to contact Glenn's ex-girlfriend, but she retained an attorney and refused to talk to any representative of the state or provide a written witness statement. She did, however, speak to Glenn's attorney and a defense investigator. The state acknowledged that defense counsel had "verbally relayed the content of those conversations to prosecutors," but it asked the court to order defense counsel to provide written summaries of the expected testimony of Glenn's ex-girlfriend and other defense witnesses, asserting that the defense had "provided nothing to the State that would allow the prosecution to conduct an effective cross-examination."

**{¶ 5}** Following a hearing, the trial court issued an order granting the state's motion to compel. The trial court determined that Crim.R. 16 mandates disclosure of written summaries of oral conversations with witnesses and that the defense has a reciprocal duty to disclose to the prosecution any evidence that tends to support an alibi. The trial court further noted that even if Crim.R. 16 does not mandate such disclosure, the Second District Court of Appeals has held that the local rules of the Montgomery County Court of Common Pleas require reciprocal discovery of all statements made by witnesses. *See State v. Rohde*, 2d Dist. Montgomery No. 26087, 2014-Ohio-5580, ¶ 34-35.

**{¶ 6}** The trial court rejected Glenn's argument that its order would erroneously compel the production of protected attorney work product. The court concluded that disclosures mandated under the Ohio Rules of Criminal Procedure supersede the work-product protection. It further noted that such statements are subject to disclosure only to the extent that they do not contain "internal communication of impressions, conclusions, strategy, or opinions." The trial court also made clear that its disclosure order does not apply to information that would incriminate Glenn or statements intended to be used solely as impeachment evidence. With those caveats, the trial court ordered defense counsel "to provide the State with written summaries of the statements made to defense counsel and the

defense investigator by the witnesses [the] defense intends to call regarding [Glenn's] alibi." And the court warned that the failure to comply with the order would result in the exclusion of the witnesses' testimony.

{¶ 7} Glenn appealed the trial court's discovery order to the Second District Court of Appeals, and the state moved to dismiss the appeal for lack of a final, appealable order. Glenn's attorney responded that the order was immediately appealable, because it required him to create written summaries of his oral conversations with witnesses, which he contended were protected as attorney work product.

{¶ 8} The Second District granted the state's motion to dismiss. The court held that Glenn had not made a sufficient showing that he "would not be afforded a meaningful or effective remedy by an appeal following final judgment," as required by R.C. 2505.02(B)(4)(b) for the order to be final and appealable. 2d Dist. Montgomery No. 28736, ¶ 11.

{¶ 9} Glenn appealed the Second District's judgment to this court, and we accepted the case. *See* 159 Ohio St.3d 1434, 2020-Ohio-3634, 148 N.E.3d 592. Glenn asserts that an order requiring an attorney to create and turn over to the prosecution summaries of conversations that the attorney has had with potential witnesses is a final, appealable order. He further contends that an order that compels the disclosure of attorney work product in a criminal case should always be treated as a final, appealable order.

## II. Elements of a final order

{¶ 10} The Ohio Constitution grants the courts of appeals "such jurisdiction as may be provided by law" to review "final orders" rendered by inferior courts. Ohio Constitution, Article IV, Section 3(B)(2). R.C. 2505.02 helps fill in the "provided by law" part of that jurisdictional grant by setting forth a definition of what constitutes a final order. The general rule is that all orders in a case must be reviewed in a single appeal after final judgment. *See Anderson v. Richards*, 173

Ohio St. 50, 55, 179 N.E.2d 918 (1962) (acknowledging "the principle that there should be only one appeal in the cause itself wherein all errors can be urged simultaneously"); *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994) (the "general rule [is] that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of [trial] court error at any stage of the litigation may be ventilated"). But R.C. 2505.02 provides a limited exception by including within the definition of a final order certain types of interlocutory decisions of a trial court.

{¶ 11} Relevant here is the provision addressing orders granting or denying a "provisional remedy." Under R.C. 2505.02(B)(4), an appellate court has jurisdiction to review, affirm, modify, or reverse an "order that grants or denies a provisional remedy" when both of the following circumstances are satisfied:

> (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
> (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

This provision guides our analysis and resolution of this case.

### A. *The order grants a provisional remedy*

{¶ 12} The threshold requirement for an order to be appealable under R.C. 2505.02(B)(4) is that the order must grant or deny a provisional remedy. A provisional remedy is "a proceeding ancillary to an action" and includes a proceeding for "discovery of privileged matter." R.C. 2505.02(A)(3). This court has held that a discovery order compelling the disclosure of attorney work product falls within the rubric of "discovery of a privileged matter" and is therefore a

provisional remedy. *Smith v. Chen*, 142 Ohio St.3d 411, 2015-Ohio-1480, 31 N.E.3d 633, ¶ 5-6; *see also Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 55.

{¶ 13} Still, that leaves something of a chicken/egg quandary: the state disputes that the order requires the disclosure of attorney work product. But at this juncture, we need not resolve the question whether the trial court's order definitively compels the disclosure of protected attorney work product. "To impose such a requirement would force an appellate court 'to decide the merits of an appeal in order to decide whether it has the power to hear and decide the merits of an appeal.' " *Byrd v. U.S. Xpress, Inc.*, 2014-Ohio-5733, 26 N.E.3d 858, ¶ 12 (1st Dist.), quoting *Bennett v. Martin*, 186 Ohio App.3d 412, 2009-Ohio-6195, 928 N.E.2d 763, ¶ 35 (10th Dist.). Rather, to determine whether the order satisfies the provisional-remedy requirement for appealability, we need review only whether Glenn has made a colorable claim that the order directs him to disclose information that might be protected attorney work product. *Id.*

{¶ 14} The trial court ordered Glenn's attorney to create summaries of his conversations with defense witnesses. Yet the scope of the order is somewhat circumscribed: it suggests that in creating those summaries, Glenn is not required to disclose any "internal communication of impressions, conclusions, strategy, or opinions," nor must Glenn provide the prosecution with any incriminating information or statements that the defense intends to use only for impeachment.

{¶ 15} Our discovery rules encourage the disclosure of "information necessary for a full and fair adjudication of the facts." Crim.R. 16(A). Indeed, we have long said that the overall objective of our criminal rules " ' "is to remove the element of gamesmanship from a trial." ' " *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 19, quoting *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3, 511 N.E.2d 1138 (1987), quoting *State v. Howard*, 56 Ohio St.2d 328, 333, 383 N.E.2d 912 (1978). And we have recognized that our discovery rules

were designed to " 'prevent surprise and the secreting of evidence favorable to one party.' " *Id*., quoting *Lakewood* at 3. Thus, with limited exceptions, Crim.R. 16 imposes a reciprocal duty on the defense and the prosecution to disclose material information to the opposing party. Crim.R. 16(A) and (H).

{¶ 16} Nonetheless, the United States Supreme Court has recognized that certain aspects of an attorney's efforts on behalf of his client—reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways"—may be protected from disclosure as attorney work product. *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947). *Hickman* arose out of an appeal from a contempt citation by an attorney who had refused to disclose certain materials prepared by the attorney in preparation for possible litigation. *Id.* at 500-501. The court explained that the disclosure of memoranda summarizing an attorney's oral interviews with witnesses is "particularly disfavored because it tends to reveal the attorney's mental processes," *Upjohn Co. v. United States*, 449 U.S. 383, 399, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), citing *Hickman* at 513 (noting that such summaries would reflect "what [the attorney] saw fit to write down regarding witnesses' remarks"), and *Hickman* at 516-517 (Jackson, J., concurring) (explaining that "the statement would be [the attorney's] language permeated with his inferences"). We have recognized the work-product doctrine, noting that it emanates from the *Hickman* decision. *See Squire, Sanders & Dempsey, L.L.P.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, at ¶ 54.

{¶ 17} The United States Supreme Court has also held that the attorney-work-product doctrine applies in criminal cases. *United States v. Nobles*, 422 U.S. 225, 236, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). And Ohio's Crim.R. 16(J) explicitly protects "[m]aterials subject to the work product protection" from disclosure in criminal cases. By its plain terms, the criminal rule incorporates the work-product doctrine.

**{¶ 18}** The protection for attorney work product is not absolute. *Squire, Sanders & Dempsey, L.L.P.* at ¶ 55, citing *Nobles* at 239. The protection can be overcome in appropriate circumstances by showing a particularized need for the information. *Hickman* at 511; 8 Wright & Miller, *Federal Practice and Procedure*, Section 2025 (3d Ed.1999). And the doctrine is generally understood as providing a much greater level of protection to opinion work product that reveals an attorney's thought processes than to mere fact work product, such as witness statements, that reveal underlying facts without disclosing an attorney's mental impressions. *See, e.g.*, *In re Antitrust Grand Jury*, 805 F.2d 155, 163-164 (6th Cir.1986); *In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir.2017). The former is often said to require " 'an exceptional showing of need' " before it can be disclosed, while the latter has been said to require only a showing of " 'good cause.' " *Grace v. Mastruserio*, 182 Ohio App.3d 243, 2007-Ohio-3942, 912 N.E.2d 608, ¶ 31-32 (1st Dist.), quoting *Jerome v. A-Best Prods. Co.*, 8th Dist. Cuyahoga Nos. 79139, 79140, 79141, and 79142, 2002-Ohio-1824, ¶ 20-21; *see also Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir.2000).

**{¶ 19}** As the *Hickman* court acknowledged, "Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had." *Hickman*, 329 U.S. at 511, 67 S.Ct. 385, 91 L.Ed. 451. Thus, although a "lawyer's recordation of mental impressions, personal beliefs, trial strategy, legal conclusions, or anything else that could not be fairly said to be the witness' own statement" is entitled to significant work-product protection, *Goldberg v. United States*, 425 U.S. 94, 106, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976) (cleaned up), "it is possible to [require production of] 'statements' taken down by an attorney, and still preserve the sanctity of the attorney's work product," *Saunders v. United States*, 316 F.2d 346, 349-350 (D.C.Cir.1963); *see also id.* at 350 (if an attorney has made "a substantially verbatim record of his interview, * * * his notes constitute a

'statement' and include no protected material flowing from the attorney's mental processes").

{¶ 20} For our purposes, though, we need not determine whether Glenn is correct that compliance with the trial court's order will improperly require him to disclose protected work-product information; we need only decide whether he has made a colorable claim that it will. We conclude (and the state concedes) that he has. Glenn has set forth at least a plausible theory that compliance with the court's order will require him to disclose materials that are protected by the attorney-work-product doctrine.

*B. The order determines the attorney-work-product issue and prevents a judgment in Glenn's favor with respect to that issue*

{¶ 21} There can be little question that the trial court's discovery order meets the second requirement of R.C. 2505.02(B)(4)(a): "[t]he order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy." The order directs defense counsel to create "written summaries of the statements made to defense counsel and the defense investigator by the witnesses [the] defense intends to call regarding [Glenn's] alibi," and it provides that the witnesses will be barred from testifying if defense counsel fails to comply. As this court has previously explained, "[I]t would be impossible to later obtain a judgment denying [a] motion to compel disclosure if the party has already disclosed the materials." *Burnham v. Cleveland Clinic*, 151 Ohio St.3d 356, 2016-Ohio-8000, 89 N.E.3d 536, ¶ 21 (lead opinion). Thus, the order plainly "determines the [attorney-work-product] issue and prevents a judgment" in Glenn's favor "regarding that issue," *id.* at ¶ 20. Indeed, the state concedes that this requirement also has been satisfied.

*C. Glenn has failed to show that any harm caused by the discovery order cannot be effectively remedied by an appeal after final judgment*

**{¶ 22}** We now turn to the third requirement for an order granting a provisional remedy to be immediately appealable—and the crux of the parties' dispute—that the "appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment." R.C. 2505.02(B)(4)(b). The burden of establishing the appellate court's jurisdiction over an interlocutory appeal "falls on the party who knocks on the courthouse doors asking for interlocutory relief." *Smith*, 142 Ohio St.3d 411, 2015-Ohio-1480, 31 N.E.3d 633, at ¶ 8. To meet this burden, Glenn must establish not only that he has a colorable claim that the order compels the disclosure of attorney work product but also that any harm from its disclosure could not be remedied on appeal from a final judgment. *Id.* at ¶ 5; *Burnham* at ¶ 20.

**{¶ 23}** Glenn has failed to make such a showing. In his response to the state's motion to dismiss his appeal in the Second District, Glenn offered a single conclusory statement regarding the effective-remedy requirement, asserting that "[o]nce the information is released the privilege is violated." And Glenn's arguments in this court are similarly sparse. Echoing concerns discussed in *Hickman*, 329 U.S. at 513, 67 S.Ct. 385, 91 L.Ed. 451, Glenn suggests that by creating summaries of witness statements to comply with the court's order, defense counsel might subject himself to being called to testify against Glenn's witnesses should their testimony deviate from defense counsel's recollections. He addresses the effective-remedy question by claiming, "Arguably, forcing an attorney into such a situation is not something that can be rectified on direct appeal and likely would lead to the consequences foreseen in *Hickman*."

**{¶ 24}** Although we acknowledge those concerns, there is no reason that such a situation could not be rectified in an appeal following final judgment. If that scenario comes to fruition and the appellate court determines that the trial court's

discovery order was improper, then it may grant Glenn a new trial and order the exclusion of the improperly disclosed statements. In fact, when pressed on the effective-remedy question during oral argument, the only concrete reasons that counsel for Glenn set forth to explain why a postjudgment appeal would not be effective was that Glenn might have to face a second trial and possible additional pretrial incarceration. But the possibility of retrial does not render the appeal mechanism ineffective. Those concerns are present in virtually every criminal appeal; that doesn't mean they are sufficient to convert every interlocutory order into a final, appealable order.

{¶ 25} Glenn insists that this case compels a different result because the order requires him to *create* summaries of the expected witness testimony. But the fact that the summaries must be created and disclosed does not establish that any harm resulting from the order cannot be effectively remedied in a postjudgment appeal. And in this situation, should Glenn's attorney choose to comply with the order, he will have the benefit of knowing in advance that the documents will be viewed by the prosecution and the ability to prepare them accordingly, which is not the case when an attorney is simply taking interview notes for his own use. We therefore fail to understand the dissent's worries that defense counsel's providing summations of alibi-witness information to the state "inevitably" would amount to the disclosure of counsel's "mental impressions regarding the witnesses' statements," his "trial strategy," or his "evaluation of the credibility of witnesses," such that Glenn will be irreparably harmed in the absence of an immediate appeal. Dissenting opinion at ¶ 32, 38.

{¶ 26} Moreover, it is not clear at this juncture exactly what information the trial court would deem sufficient to comply with its order. The state sought "reports summarizing proposed testimony of defense witnesses." Although the trial court issued a broad directive for defense counsel to provide "written summaries of the statements" made by the witnesses, it also appears to have excluded from its order

any disclosure of "internal communication of impressions, conclusions, strategy, or opinions," incriminating information, and statements intended to be used only for impeachment. It is possible that summaries providing a greater measure of specificity regarding the basic timing and location details of the alibi evidence that each witness is expected to offer would suffice to comply with the court's directive. In short, the uncertainty surrounding what the trial court would consider satisfactory compliance with its order suggests that the order would be better reviewed after the situation has fully unfolded.

{¶ 27} Glenn also contends that an order compelling disclosure of attorney work product in a criminal case should be immediately appealable, even if a similar order in a civil case would not be. Glenn maintains that his counsel is being compelled "to aid in the conviction of [his] own client" and thus the order warrants immediate review. But he does not explain how providing summaries of expected alibi testimony to the state—while withholding any potentially incriminating information—would necessarily aid in his conviction. Rather, the bulk of the arguments and supporting caselaw that he presents on that claim relate to his contention that the order fails to comply with the discovery rules as outlined in Crim.R. 16 and undermines the adversarial nature of the trial system. But those arguments go to the merits of the order. Because we conclude that the appellate court correctly determined that it lacked jurisdiction to review the order at this time, we expressly do not offer any view as to whether the trial court's order was proper. The appropriateness of the order is a question for a later appeal.

{¶ 28} We agree with Glenn that the specifics of a discovery order challenged on appeal should be evaluated on a case-by-case basis. And we do not hold that a trial court's order compelling the disclosure of attorney work product may never form the basis of an interlocutory appeal. But R.C. 2505.02(B)(4) is clear that such an order is not immediately appealable unless the appealing party would be denied an effective remedy in an appeal following the final judgment. In

view of the nature of the order in this case, which involves defense counsel's creation and disclosure of summaries of the expected testimony of alibi witnesses, we cannot conclude that Glenn would lack a meaningful remedy through an appeal following final judgment.

### III. Conclusion

{¶ 29} Glenn has failed to establish that the discovery order at issue in this case satisfies the requirements of R.C. 2505.02(B)(4) for being a final order. We therefore affirm the judgment of the Second District Court of Appeals dismissing the appeal for lack of jurisdiction, and we remand the case to the trial court for further proceedings.

Judgment affirmed

and cause remanded.

O'CONNOR, C.J., and FISCHER, DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY, J., dissents, with an opinion.

_____

**KENNEDY, J., dissenting.**

{¶ 30} I agree with the majority that "a discovery order compelling the disclosure of attorney work product falls within the rubric of 'discovery of a privileged matter' and is therefore a provisional remedy" within the meaning of R.C. 2505.02(A)(3). Majority opinion at ¶ 12, quoting R.C. 2505.02(A)(3); *see also Smith v. Chen*, 142 Ohio St.3d 411, 2015-Ohio-1480, 31 N.E.3d 633, ¶ 11 (Kennedy, J., dissenting). I also agree with the majority that appellant, Samuel Glenn, has made a sufficient showing that the trial court's order requiring his defense counsel to create and disclose written summaries of the oral statements of defense witnesses may be prohibited by the work-product doctrine.

{¶ 31} However, I part ways with the majority because an appeal following final judgment in this case would not afford Glenn a meaningful or effective remedy

and the trial court's discovery order is therefore a final, appealable order pursuant to R.C. 2505.02(B)(4). For those reasons, I dissent and would reverse the judgment of the Second District Court of Appeals and remand this matter to that court for it to address the merits of Glenn's appeal.

{¶ 32} This case is not about requiring defense counsel to disclose an existing written statement of a witness or a recording of a witness's oral statement. Instead, we are faced with an order requiring defense counsel to create and disclose written summaries of witnesses' oral statements. This will inevitably require defense counsel to provide his mental impressions regarding the witnesses' statements, which is attorney work product that is entitled to special protection, *see Upjohn Co. v. United States*, 449 U.S. 383, 401, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), and would potentially force counsel to become a witness against Glenn, *see Hickmann v. Taylor*, 329 U.S. 495, 512-513, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

{¶ 33} In this matter, Glenn's defense counsel has been ordered by the trial court "to provide the State with written summaries of the statements made by the witnesses [the] defense intends to call regarding defendant's alibi during defense counsel's (and the defense investigator's) conversations with such individuals." Glenn maintains that the only way to comply with that order is for defense counsel to create the written summaries using counsel's "own memory and/or notes, investigative recall, mental process, recall of conversations with witness[es] or even [Glenn]." He argues that requiring defense counsel to create and disclose privileged materials violates the public policies acknowledged in *Hickman.* And Glenn submits that because the summaries necessarily would "be produced from the mind" of defense counsel and inaccuracies with respect to the witnesses' statements might result, counsel could potentially be called as a witness at trial against Glenn if the state uses the statements to impeach the defense witnesses. Therefore, he argues, the harm that would be caused by the trial court's discovery order could not

be undone through an appeal, and the order is therefore a final, appealable order pursuant to R.C. 2505.02. I agree.

{¶ 34} R.C. 2505.02(B)(4) provides that an appellate court has jurisdiction to review, affirm, modify or reverse "[a]n order that grants or denies a provisional remedy" when both of the following are satisfied:

> (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
>
> (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

{¶ 35} A provisional remedy is "a proceeding ancillary to an action," including a proceeding involving "discovery of privileged matter." R.C. 2505.02(A)(3). A discovery order compelling the production of attorney work product constitutes discovery of privileged matter and is therefore a provisional remedy within the meaning of R.C. 2505.02(A)(3). *Smith*, 142 Ohio St.3d 411, 2015-Ohio-1480, 31 N.E.3d 633, at ¶ 5-6.

{¶ 36} A discovery order that compels defense counsel to reconstruct and disclose defense witnesses' statements relating to the accused's alibi is a classic example of the proverbial bell that cannot be unrung, and the damage that would be caused to the accused's defense by such an error cannot be remedied on appeal. *See State v. Muncie*, 91 Ohio St.3d 440, 451, 746 N.E.2d 1092 (2001). The premise of the work-product doctrine's protection of an attorney's mental processes is that in effectively representing the client's interests, "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman*, 329 U.S. at 510, 67 S.Ct. 385, 91 L.Ed. 451.

As the United States Supreme Court explained in *Hickman*, "[p]roper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Id.* at 511. Were it to be otherwise, the court explained, "[a]n attorney's thoughts, heretofore inviolate, would not be his own," *id.*, resulting in inefficiency, gamesmanship, and unfairness that would inevitably harm the client's right to the effective assistance of counsel, *see id.*

{¶ 37} This is even more true regarding the representation of a person accused of a crime, whose interest in liberty hangs in the balance. Indeed, the Supreme Court has recognized that the role of the work-product doctrine "in assuring the proper functioning of the criminal justice system is even more vital" than its role in civil litigation. *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). The court has explained that "[t]he interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case." *Id.*

{¶ 38} Requiring an accused's defense counsel to write down and disclose the oral statements of defense witnesses—particularly alibi witnesses—is inherently harmful to the accused's case. This is true even if an appellate court, on direct appeal from a judgment of conviction, reverses the conviction and remands for a new trial at which the statements may not be used by the prosecution. The Supreme Court has recognized that when attorney work product based on witnesses' oral statements is produced in discovery, it reveals either communications protected by the attorney-client privilege or "the attorneys' mental processes in evaluating the communications." *Upjohn Co.*, 449 U.S. at 401, 101 S.Ct. 677, 66 L.Ed.2d 584. Short of replacing the prosecuting attorney with a special prosecutor and a court's issuing an order restricting access by the new

prosecutor to any material that could divulge the mental impressions of defense counsel, there is no way to assure that the state will not use any information relating to defense counsel's mental processes against the accused, such as defense counsel's trial strategy or evaluation of the credibility of witnesses. Defense counsel could also be forced to adopt a different trial strategy, including calling different witnesses or abandoning an alibi defense altogether, due to the state's having had access to counsel's mental processes and impressions about the case. And once the state has knowledge of any weaknesses of the defense witnesses, nothing would preclude the state from seeking additional damaging evidence that would be, in essence, the fruit of the poisonous tree. In the end, it is impossible to gauge whether the state will be able to use what it has learned—knowingly or passively—to the detriment of the accused at the new trial.

{¶ 39} Moreover, the disclosure of defense counsel's mental processes involves harms other than the loss of confidentiality. The use of defense counsel's written recollection of defense witnesses' oral statements would, in effect, turn counsel into a witness against his client and potentially cause him to contribute to his client's conviction if the written recollection is used to impeach a defense witness. And if there were to be a key inconsistency between the witness's testimony and counsel's recollection of what the witness had previously said, there "would [be] a substantial risk that the lawyer would have to testify," *Nobles* at 252 (White, J., concurring), and defense counsel would be forced to destroy the credibility of the accused's witnesses. These concerns and corresponding difficulties were eloquently addressed by Justice Jackson in his concurring opinion in *Hickman*:

> I can conceive of no practice more demoralizing to the Bar than to
> require a lawyer to write out and deliver to his adversary an account
> of what witnesses have told him. Even if his recollection were

perfect, the statement would be his language permeated with his inferences. Everyone who has tried it knows that it is almost impossible so fairly to record the expressions and emphasis of a witness that when he testifies in the environment of the court and under the influence of the leading question there will not be departures in some respects. Whenever the testimony of the witness would differ from the "exact" statement the lawyer had delivered, the lawyer's statement would be whipped out to impeach the witness. Counsel producing his adversary's "inexact" statement could lose nothing by saying, "Here is a contradiction, gentlemen of the jury. I do not know whether it is my adversary or his witness who is not telling the truth, but one is not." Of course, if this practice were adopted, that scene would be repeated over and over again. The lawyer who delivers such statements often would find himself branded a deceiver afraid to take the stand to support his own version of the witness's conversation with him, or else he will have to go on the stand to defend his own credibility—perhaps against that of his chief witness, or possibly even his client.

329 U.S. at 516-517, 67 S.Ct. 385, 91 L.Ed. 451 (Jackson, J., concurring).

{¶ 40} Further, Prof.Cond.R. 3.7(a) generally prohibits an attorney from serving as counsel at a trial in which he is likely to be called as a witness. As Comment 1 to that rule explains, "[c]ombining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client." Requiring defense counsel to provide a written recollection of defense witnesses' oral statements could therefore necessitate defense counsel's withdrawal from representation and even deny the accused his counsel of choice—which is a fundamental constitutional right, *see*

*United States v. Gonzalez-Lopez*, 548 U.S. 140, 147-148, 126 S.Ct. 2557, 2563, 165 L.Ed.2d 409 (2006).

{¶ 41} Compelling counsel to reconstruct oral witness statements from memory therefore places counsel in a position that is adversarial to his client and brings counsel's loyalty into question, causing a breakdown in the attorney-client relationship that leaves the accused in an untenable position. And although a new trial may theoretically provide the opportunity for a fair trial free of the error of improper disclosure, it cannot remedy these substantial harms.

{¶ 42} Because it can never be said with certainty that the harms caused by compelling defense counsel to reconstruct and disclose oral statements of defense witnesses from memory could be remedied by a new trial following an appeal, I would hold that such a discovery order is final and appealable under R.C. 2505.02, without any further showing of prejudice to the accused.

{¶ 43} Glenn has shown that any harm caused by the discovery order compelling the disclosure of attorney work product may not be effectively remedied by an appeal after final judgment. *See* R.C. 2505.02(B)(4)(b). I would reverse the judgment of the court of appeals and remand to that court for it to consider the merits of Glenn's appeal. Because the majority does not, I dissent.

————————————

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Andrew T. French, Assistant Prosecuting Attorney, for appellee.

Anthony Comunale, for appellant.

————————————