[Cite as *England v. 116 W. Main, L.L.C.*, 2023-Ohio-3086.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

| | |
|---|---|
| ROB ENGLAND, IN HIS CAPACITY OF CHIEF BLDG. OFFICIAL | C.A. Nos. 2023-CA-19; 2023-CA-22 |
| Appellee | Trial Court Case Nos. 23 CV 109; 23 CV 238 |
| v. | |
| 116 WEST MAIN LLC | |
| Appellants | **ORDER – SHOW CAUSE ORDER SATISFIED** |

_____

PER CURIAM:

{¶ 1} On June 30, 2023, 116 West Main LLC and Randy Kimmel (collectively, "West Main") appealed the trial court's June 23, 2023, "Entry and Order Concerning Status of Tavern Building and Selection of Court-Appointed Expert Witness" in Miami County Common Pleas Court Case No. 23 CV 00238. It appeared to this court that the trial court's order was not a final order. *See* R.C. 2505.02 (defining final orders). Thus, on July 5, 2023, this court issued an order for West Main to show cause why the appeal should not be dismissed for lack of jurisdiction. On July 12, 2023, West Main responded to our show cause order. On July 26, 2023, City of Troy ("Troy") replied to West Main's response, as did Evil Empire, LLC, and Cheryl Cheadle (collectively, "Evil Empire"). On

August 2, 2023, West Main, with leave of this court, filed a surreply to Evil Empire's reply. Accordingly, this matter is fully briefed and ripe for our consideration.[1]

## I.      Factual Background

**{¶ 2}**   The order on appeal concerns the status of the "Tavern Building" in Troy's downtown historic district. After the Tavern Building sustained tornado damage in 2020, its owner, West Main, sought to demolish the structure. *Evil Empire, LLC v. Troy Bd. of Zoning Appeals*, 2d Dist. Miami No. 2022-CA-25, 2023-Ohio-960, ¶ 4. West Main applied for and obtained a certificate of appropriateness under the Troy Codified Ordinances to demolish the building from Troy's planning commission. *Id*. Adjoining landowners, i.e., Evil Empire, and others appealed the planning commission's decision to the Troy Board of Zoning Appeals ("BZA").  *Id*. at ¶ 4-5. The BZA approved West Main's application with modifications. *Id*. at ¶ 5.

**{¶ 3}**   Evil Empire appealed the BZA's decision to the Miami County Common Pleas Court (Case No. 21 CV 00378). *Id*. at ¶ 8. The common pleas court determined that the BZA's decision was arbitrary, unreasonable, and unsupported by a preponderance of substantial, reliable, and probative evidence. *Id*. at ¶ 9. West Main appealed the common pleas court's decision. On March 24, 2023, this court determined that the common pleas court did not abuse its discretion in reversing the BZA's decision. *Id*. at ¶ 34. Therefore, as of March 24, 2023, it appeared that if West Main intended to demolish the Tavern

---

[1] On July 10, 2023, Rob England, in his capacity as Chief Building Official for the Miami County Building Department, also appealed from the June 23 Order, giving rise to Miami County Appellate Case No. 2023-CA-22. On July 24, 2023, this court issued a show cause order substantially similar to that issued in Miami County Appellate Case No. 2023-CA-19, a response to which was filed on July 28, 2023.

Building, West Main would then need to apply for and obtain a certificate of appropriateness anew.

### A. March 29, 2023 – West Main Begins Demolition of the Tavern Building and the Trial Court Enjoins Demolition

**{¶ 4}** On March 27, 2023, Rob England, in his capacity as Chief Building Official for the Miami County Building Department (the "CBO"), issued Adjudication Order #0034 finding the Tavern Building to be a "serious hazard" to be "abated" within 14 days. West Main interpreted the adjudication order to allow demolition of the Tavern Building in accordance with Section 109 of the Ohio Building Code and without need for a certificate of appropriateness pursuant to Troy Codified Ordinance 1143.22(q). In the early morning hours of March 29, 2023, West Main began to demolish the Tavern Building.

**{¶ 5}** On March 29, 2023, at 8:51 a.m., the City of Troy filed a complaint in the common pleas court seeking preliminary and permanent injunctive relief to restrain West Main from demolishing the Tavern Building without obtaining a certificate of appropriateness under its ordinances (Case No. 23 CV 00109).[2] At 8:57 a.m., the trial court granted Troy's request for a preliminary injunction restraining West Main from "[d]emolishing, razing, or otherwise removing any part of" the Tavern Building.

**{¶ 6}** Evil Empire moved to intervene and filed a complaint seeking a declaration that West Main could not demolish the Tavern Building without a certificate of

---

[2] On March 31, 2023, Troy filed an amended complaint seeking, among other relief, a declaration that the Tavern Building is a public nuisance, and a mandatory injunction requiring West Main to "repair and remediate" the Tavern Building "sufficiently such that the structures are maintained in compliance with all local and state codes." The amended complaint reaffirmed Troy's request to permanently enjoin West Main from demolishing the Tavern Building. Kimmel, registered agent of 116 West Main LLC, was added as a defendant.

appropriateness. The complaint also sought preliminary and permanent injunctive relief restraining West Main from "demolishing any part of the Tavern Building" and mandating that it "[secure] any compromised walls, [repair] the damage to the bricks of the north parapet wall, [repair] damaged flashing, and [repair] or [cover] the exposed portions of the roof with a tarp to prevent water infiltration."[3] The trial court granted Evil Empire's motion to intervene.

**{¶ 7}** After an emergency hearing to determine the risk of structural collapse at 3:00 p.m., the trial court set a hearing on the preliminary injunction requests for April 4, 2023, which was later continued to April 18, 2023.

## B. An Agreed Preliminary Injunction is Entered

**{¶ 8}** Before the April 18, 2023, hearing, West Main moved to dissolve the preliminary injunction issued on March 29, 2023. Troy and Evil Empire responded in opposition to the motion. The CBO then withdrew Adjudication Order #0034.

**{¶ 9}** On April 18, 2023, the trial court entered an "Agreed Preliminary Injunction Order" restraining West Main from "demolishing, razing, or otherwise removing any part of the [Tavern Building], unless otherwise directed by the Court." The parties agreed to

---

[3] Evil Empire filed an amended complaint on April 7, 2023, seeking relief substantially like that sought in its original complaint but adding a common law nuisance claim and a claim for damages under R.C. 2307.60. Kimmel was added as a defendant.

the order, in part, "to avoid the expense of a preliminary injunction hearing." West Main withdrew its motion to dissolve the preliminary injunction entered on March 29, 2023.

### C. The CBO Issues Adjudication Order #0036 and New Litigation Ensues

{¶ 10} On May 9, 2023, the CBO issued Adjudication Order #0036 finding the Tavern Building to be a "serious hazard" and ordered West Main to "abate all unsafe conditions immediately."  In the common pleas court, West Main renewed their motion to dissolve the preliminary injunction prohibiting demolition of the Tavern Building. On May 23, 2023, the trial court stayed all deadlines in the case with the apparent goal of allowing the parties time to reach a settlement. The trial court ordered that "[w]hile the matter remains pending, [West Main] agree[s] that the building will not be demolished."

{¶ 11} On June 16, 2023, the CBO filed a complaint in the common pleas court seeking preliminary and permanent injunctive relief to restrain West Main "from continuing to violate Miami County Department of Development Adjudication Order #0036 and requiring that [West Main] immediately raze" the Tavern Building (Case No. 23 CV 00238). On June 21, 2023, the trial court conducted a status conference, at which all parties to Miami County Common Pleas Court Case Nos. 23 CV 00109 and 00238 appeared.

### D. June 23, 2023 – The Trial Court Issues the Order on Appeal

{¶ 12} On June 23, 2023, the trial court issued an "Entry and Order Concerning Status of Tavern Building and Selection of Court-Appointed Expert Witness." In pertinent part, the order states that "[t]he Court will not order the immediate demolition of the Tavern Building." Further, the trial court orders West Main, "after consultation with [the CBO] and [Troy Fire] Chief Simmons, to take whatever steps necessary to shore-up the exterior brick wall on the north side of the third floor of the Tavern Building, so that it is no longer

in 'imminent danger of collapse,'" on or before July 7, 2023. The order also announces the trial court's intention to appoint an independent expert witness, at the shared expense of the parties, "to clarify the salient issues and present a clear portrayal of the Tavern Building's status." By separate order, the trial court consolidated Miami County Common Pleas Court Case Nos. 23 CV 00109 and 23 CV 00238.

## II.  Law & Analysis

{¶ 13} The court of appeals lacks jurisdiction to review any order that is not a final order. *See* Ohio Constitution, Article IV, Section 3(B)(2). "If a lower court's order is not final, then an appellate court does not have jurisdiction to review the matter, and the matter must be dismissed." *Gen. Acc. Ins. v. Ins. Co. of N. Am*., 44 Ohio St.3d 17, 20, 540 N.E.2d 266 (1989). A court of appeals has jurisdiction to review, affirm, modify, or reverse an "order that grants or denies a provisional remedy" when both of the following circumstances are satisfied:

(a) The order in effect determines the action with respect to the provisional

remedy and prevents a judgment in the action in favor of the appealing party

with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful or effective

remedy by an appeal following final judgment as to all proceedings, issues,

claims, and parties in the action.

R.C. 2505.02(B)(4).

{¶ 14} The parties agree that R.C. 2505.02(B)(4) governs the finality of the trial court's order. However, the parties disagree whether the order is final within that analytical

framework. West Main argues that the trial court's order is final in all respects.[4] Evil Empire takes the opposing view.

## A. Orders Prohibiting Immediate Demolition and Mandating that West Main Shore Up the Tavern Building

### 1. The Order Grants or Denies a Provisional Remedy.

{¶ 15} The parties disagree about whether the June 23 Order grants or denies a provisional remedy. Evil Empire contends that the order is merely a status order and not reviewable. In contrast, West Main argues that the June 23 Order grants or denies a preliminary injunction.

{¶ 16} A "provisional remedy" is "a proceeding ancillary to an action, including * * * a preliminary injunction." R.C. 2505.02(A)(3). A "preliminary injunction" is a "temporary injunction issued before or during trial to prevent an irreparable injury from occurring before the court has a chance to decide the case." *Black's Law Dictionary* (11th Ed.2019). An "injunction" is simply a "court order commanding or preventing an action." *Id*. Injunctions may be prohibitory or mandatory in nature: "[a] prohibitory injunction preserves the status quo by enjoining a defendant from performing the challenged acts in the future." *Heartland of Urbana OH, L.L.C. v. McHugh Fuller Law Group, P.L.L.C.*, 2016-Ohio-6959, 72 N.E.3d 23, ¶ 87 (2d Dist.). In contrast, "[a] mandatory injunction * * * is an extraordinary

---

[4] Troy represents that it has "dismissed those portions of its Amended Complaint that identify repair as the specific means to accomplish nuisance abatement and ordinance/code compliance." It appears that Troy no longer seeks to enjoin the immediate demolition of the Tavern Building and supports West Main's arguments that the order on appeal is final.

remedy that compels the defendant to restore a party's rights through an affirmative action." *Id*.

**{¶ 17}** To determine the nature of the trial court's order, we review the substance and effect of the order. Although the trial court has denominated its order as a "status order," this language is not dispositive. Here, it appears that, before deciding the consolidated common pleas court cases on their respective merits, the trial court has issued a prohibitory injunction preventing West Main from complying with the CBO's Adjudication Order #0036, i.e., immediately razing the Tavern Building. In this respect, the trial court has denied the preliminary injunctive relief sought by the CBO and has granted, at least in part, the preliminary injunctive relief sought by Evil Empire. The trial court has also issued a mandatory preliminary injunction that West Main "shore-up" the exterior brick wall on the north side of the third floor of the Tavern Building to prevent a structural collapse, which is consistent with the preliminary injunctive relief sought by Evil Empire. Therefore, we agree with West Main that the June 23 Order grants or denies a provisional remedy, i.e., a preliminary injunction.

2. Additional Analytical Steps

**{¶ 18}** Although an order granting or denying a preliminary injunction is a provisional remedy, this alone does not determine whether this court has jurisdiction to review the order. "Preliminary injunctions are considered interlocutory, tentative, and impermanent in nature." *McHenry v. McHenry*, 5th Dist. Stark No. 2013CA00001, 2013-Ohio-3693, ¶ 9, citing *Quinlivan v. H.E.A.T. Total Facility Solutions, Inc*., 6th Dist. Lucas App. No. L-10-1058, 2010-Ohio-1603, ¶ 3. "The burden of establishing the appellate court's jurisdiction over an interlocutory appeal 'falls on the party who knocks on the

courthouse doors asking for relief.'" *State v. Glenn*, 165 Ohio St.3d 432, 2021-Ohio-3369, 179 N.E.3d 1205, ¶ 22, quoting *Smith v. Chen*, 142 Ohio St.3d 411, 2015-Ohio-1480, 31 N.E.3d 633, ¶ 8. "[A]n order denying or granting a preliminary injunction is a final appealable order [only] if it satisfies the two prongs of R.C. 2505.02(B)(4)." *Deyerle v. Perrysburg*, 6th Dist. Wood No. WD-03-063, 2004-Ohio-4273, ¶ 13.

### a.  R.C. 2505.02(B)(4)(a) is Satisfied.

{¶ 19} We find that the trial court's order determines the action with respect to each preliminary injunction and prevents a judgment in the action in favor of the appealing party with respect to each preliminary injunction. *See* R.C. 2505.02(B)(4)(a). An order satisfies this requirement if 'there existed nothing further for the trial court to decide with respect to the provisional remedy.'" *Preterm-Cleveland v. Yost*, 1st Dist. Hamilton No. C-220504, 2022-Ohio-4540, ¶ 13, quoting *In re Special Docket* No. 73958, 115 Ohio St.3d 425, 2007-Ohio-5268, 875 N.E.2d 596, ¶ 29. We conclude that the trial court's orders prohibiting immediate demolition of the Tavern Building and mandating that shoring be completed on or before July 7, 2023, are sufficiently "final with respect to issuing [each] preliminary injunction" and not "tentative or contingent in any manner." *Id*. at ¶ 14. Thus, we find that the June 23 Order satisfies the requirements of R.C. 2505.02(B)(4)(a). Therefore, we

proceed to determine whether West Main would not be afforded a meaningful or effective remedy by an appeal following final judgment.

b. R.C. 2505.02(B)(4)(b) is Satisfied.

{¶ 20} The First District Court of Appeals has identified three lines of caselaw interpreting the "meaningful or effective remedy" requirement under R.C. 2505.02(B)(4)(b) when an order grants or denies a preliminary injunction:

(1) cases recognizing that preservation of the status quo generally fails to satisfy the requirements of finality;

(2) cases holding that a preliminary injunction does not meet the standard of R.C. 2505.02(B)(4)(b) when the plaintiff ultimately seeks a permanent injunction; and

(3) cases illustrating the "unringing" of the bell concept.

*Id.* at ¶ 17.

We proceed to apply these cases, in turn, to the trial court's demolition and shoring orders.

{¶ 21} A preliminary injunction which maintains the status quo pending a ruling on the merits is not a final order. *See, e.g., Taxiputinbay, LLC v. Put-in-Bay*, 6th Dist. Ottawa No. OT-20-021, 2021-Ohio-191, at ¶ 17. "Status quo" means "the last, actual, peaceable, uncontested status which preceded the pending controversy." *Id.* Evil Empire argues that the trial court's order enjoining the immediate demolition of the Tavern Building, i.e., "[t]he Court will not order the immediate demolition of the Tavern Building," is not final because it merely preserves the status quo. West Main does not make any argument to the contrary. Before Troy, Evil Empire, and the CBO filed their complaints, the greater part of

the Tavern Building had not been razed, notwithstanding the parties' concerns about its structural integrity. The June 23 Order keeps the remainder of the Tavern Building standing while the trial court determines the ultimate disposition of the structure. Accordingly, we find that the trial court's order, insofar as it prohibits immediate demolition of the Tavern Building, thereby granting preliminary injunctive relief to Evil Empire and denying preliminary injunctive relief to the CBO, maintains the status quo and is beyond immediate appellate review.[5]

{¶ 22} The portion of trial court's order commanding West Main to "shore up" the Tavern Building, however, merits additional consideration. Unlike the trial court's order prohibiting immediate demolition of the structure, the shoring order requires West Main to take affirmative action, i.e., "whatever steps necessary to shore-up the exterior brick wall on the north side of the third floor of the Tavern Building." Evil Empire does not consider this distinction to be significant. Repair orders, which the trial court has previously issued, Evil Empire argues, safeguard the Tavern Building from (further) deterioration during the (presumably) short time in which litigation is pending. Accordingly, Evil Empire concludes that the shoring order preserves the status quo and is not reviewable.

{¶ 23} Evil Empire's argument is not entirely convincing. Arguably, an order maintaining the status quo would simply leave the Tavern Building in the state in which it existed on March 29, 2023, when demolition stopped. Here, the trial court's order does

---

[5] The CBO argues in his response to our show cause order in Miami County Appellate Case No. 2023-CA-22 that he "will not have an adequate remedy to account for the extended time that the serious hazard," an "imminent danger" to the public, was "permitted to exist unchecked" unless this court reviews the order enjoining demolition of the Tavern Building. The CBO provides no caselaw to support his argument, which we reject.

more than leave the Tavern Building as it is. Instead, the order creates a new affirmative obligation for West Main to improve conditions at the Tavern Building before a date certain. This changes the status quo, which suggests that the shoring order is a final order. Nevertheless, we share the Tenth District Court of Appeals' opinion that:

> While analysis of the status quo can provide a meaningful guidepost in understanding whether a provisional remedy meets the requirement of R.C. 2505.02(B)(4)(b), the ultimate question remains whether the appealing party would be afforded a meaningful or effective remedy by an appeal following final judgment.

*Columbus v. State*, 10th Dist. Franklin No. 22AP-676, 2023-Ohio-195, ¶ 16.

Evil Empire argues that West Main has a meaningful and effective remedy by an appeal from the shoring order following final judgment. Ordinarily, "the granting of a temporary or preliminary injunction, in a suit in which the ultimate relief sought is a permanent injunction, is generally not a final appealable order." *See, e.g.*, *Taxiputinbay*, 2021-Ohio-191, at ¶ 12, quoting *Woodbridge Condominium Owners' Assn. v. Friedland*, 11th Dist. Lake No. 2003-L-072, 2004-Ohio-14, ¶ 4. The underlying rationale supporting this conclusion is that "generally, if a permanent injunction is sought, this will allow for a remedy at the conclusion of the proceedings." *Fatica Renovations, LLC v. Bridge*, 11th Dist. Geauga No. 2017-G-0106, 2017-Ohio-1419, ¶ 15. Here, Evil Empire has sought permanent injunctive relief mandating repair and remediation of the Tavern Building. The trial court's shoring order grants that relief on a preliminary basis. Thus, Evil Empire argues, West Main may appeal if the trial court grants permanent injunctive relief to Evil

Empire in the future. In the alternative, West Main might win on the merits, obviating its need for an immediate appeal.

{¶ 24} Although this line of cases would appear to foreclose an interlocutory appeal of the shoring order, we find that it does not adequately consider the issue of the potential expense that West Main may incur by complying with the shoring order. The fundamental principle underpinning this court's review of interlocutory orders under R.C. 2505.02(B)(4)(b) is that a court of appeals has jurisdiction only when the appellant demonstrates that "'the proverbial bell cannot be unrung and an appeal after final judgment on the merits will not rectify the damage' suffered by the appealing party." *State v. Muncie*, 91 Ohio St.3d 440, 451, 746 N.E.2d 1092 (2000), quoting *Gibson-Myers & Assocs. v. Pearce*, 9th Dist. Summit App. No. 19358, 1999 WL 980562, *2 (Oct. 27, 1999); *Bokma v. Raglin*, 2d Dist. Montgomery No. 29250, 2022-Ohio-960 (referencing the proverbial bell concept in appeal from order requiring release of accident victim's medical records to insurer). Generally, the principle applies to "orders compelling the production of documents containing trade secrets or privileged communications, and in cases involving the denial of requests to enforce covenants not to compete." *N. Fairfield Baptist Church v. G129, LLC*, 12th Dist. Butler No. 2009-11-281, 2010-Ohio-2543, ¶ 20, citing *Empower Aviation, L.L.C. v. Butler Cty. Bd. of Commrs*., 185 Ohio App.3d 477, 2009-Ohio-6331, 924 N.E.2d 862, ¶ 18 (1st Dist.); *see also Premier Health Care Servs., Inc. v. Schneiderman*, 2d Dist. Montgomery No. 18795, 2001 WL 1479241, *3 (order denying preliminary injunction to enforce non-compete agreement held a final order). However, the preceding list of final orders is not exhaustive, even though appellate courts narrowly

construe the boundaries of their jurisdiction under R.C. 2505.02(B)(4)(b). *See Preterm-Cleveland*, 2022-Ohio-4540, at ¶ 24.

**{¶ 25}** West Main argues that it cannot obtain meaningful and effective relief on appeal after final judgment because the preliminary injunction requires that they "undertake cost-prohibitive – but ultimately meaningless – repairs" to the Tavern Building. West Main estimates that the cost of complying with the trial court's shoring order would exceed $225,000. Troy appears to accept West Main's estimate as accurate, whereas Evil Empire argues that West Main's estimate is inflated. Evil Empire suggests that shoring up the Tavern Building might cost as little as $35,000.

**{¶ 26}** Next, West Main compares the cost of compliance with the economic value of the Tavern Building. West Main states that the Tavern Building, and the land on which it sits, was appraised at $440,000 in 2020. Further, West Main indicates that it received a $456,000 offer for the Tavern Building in September 2021, contingent on demolition of the structure. Demolition of the Tavern Building itself would cost $250,000. Moreover, complete repair and remediation of the structure would allegedly cost more than $2.8 million. All of which is to say, West Main alleges that it would be deprived of much of the economic value of the Tavern Building, if it complies with the trial court's shoring order and is subsequently permitted to demolish the Tavern Building following final judgment on the merits. Waiting for appellate review after a final judgment on the merits would be akin to a futile attempt to unring the proverbial bell.

**{¶ 27}** Ordinarily, arguments that an "appeal from any subsequent adverse final judgment would be inadequate due to time and expense are without merit." *See State ex rel. Lyons v. Zaleski*, 75 Ohio St.3d 623, 626, 665 N.E.2d 212 (1996); *Gardner v. Ford*,

1st Dist. Hamilton No. C-150018, 2015-Ohio-4242, ¶ 8 (DeWine, J.) ("the prospect of high litigation costs does not make a remedy following final judgment unmeaningful or ineffective"); *accord Katherine's Collection, Inc. v. Kleski*, 9th Dist. Summit No. 26477, 2013-Ohio-1530, ¶ 13 (financial hardship caused by loss of employment under preliminary injunction did not create jurisdiction under R.C. 2505.02(B)(4)). The general principle is that costs, particularly in the form of litigation expenses, do not open the doors to the court of appeals under R.C. 2505.02(B)(4)(b). However, there have been cases in which the magnitude of expense placed on the aggrieved party by an interlocutory order has been held to permit an immediate appeal. *See Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, 876 N.E.2d 1217, ¶ 26 (finding that the incurrence of unnecessary trial expenses is an injury that cannot be remedied by an appeal from final judgment in the context of asbestos litigation); *see also Huegemann v. VanBakel*, 12th Dist. Fayette No. CA2013-08-022, 2014-Ohio-1888, ¶ 24 (determining that order denying motion to dismiss for lack of personal jurisdiction was final because of litigation costs and delay in recovering money would deprive foreign defendants of meaningful and effective remedy). It seems clear enough that, at least in some instances, compliance with a preliminary injunction may impose costs on a party that substantially exceed the ordinary time and expense of litigation. Therefore, we find that an appellant's compliance costs are relevant to the finality of a preliminary injunction.

{¶ 28} To illustrate the point, in *Cleveland Hous. Renewal Project, Inc. v. Wells Fargo Bank, N.A.*, 188 Ohio App.3d 36, 2010-Ohio-2351, 934 N.E.2d 372 (8th Dist.), the Eighth District Court of Appeals considered the finality of an order granting preliminary

injunctive relief to the plaintiff and commanding the defendant, Wells Fargo Bank, to abate nuisance conditions at 200 of its properties. The Eighth District observed that:

> In order to comply with the mandates of the preliminary injunction, Wells Fargo would be required to expend a substantial amount of money. According to Wells Fargo, financial prudence would require it to demolish the homes, which would cost approximately $10,000 per property. Since Wells Fargo currently owns 180 homes in Cleveland, this could result in Wells Fargo expending $1.8 million in order to comply with the trial court's order. We recognize that Wells Fargo could forego demolition and make the necessary repairs, but there is no guarantee that it would recoup its expenses if it then attempted to transfer the properties. We acknowledge that the trial court required [non-profit corporation] to post bonds when granting the TRO and preliminary injunction, but these bonds amount to less than $20,000 and would not reimburse Wells Fargo for its losses should it prove that the preliminary injunction was improvidently granted.

*Wells Fargo* at ¶ 21.

**{¶ 29}** Thus, the Eighth District concluded that the preliminary injunction was a final order because no remedy was available in a direct appeal that would effectively and meaningfully compensate Wells Fargo for losses sustained if it complied with the trial court's preliminary injunction. *Id*. at ¶ 22. These losses were distinct from the garden variety losses of time and expense faced in ordinary civil litigation.

**{¶ 30}** Here, as in *Wells Fargo*, compliance with the trial court's order will require West Main to spend money – potentially a substantial amount of money. While the

magnitude of expense is uncertain, we conclude that it is not inconceivable that, if West Main complies with the trial court's shoring order, it will be unable to recoup its potentially significant expenses, should it demonstrate that the shoring order was improvidently granted.[6] Qualitatively, we find this potential expense to be different than the ordinary time and expense of litigation. Thus, we determine that the trial court's June 23 Order is a final order under R.C. 2505.02(B)(4) to the extent that it orders West Main "after consultation with Mr. England and Chief Simmons, to take whatever steps necessary to shore-up the exterior brick wall on the north side of the third floor of the Tavern Building, so that it is no longer in 'imminent danger of collapse,'" on or before July 7, 2023. West Main has met its burden in establishing our jurisdiction to review the trial court's shoring order.[7]

## B. Appointment of Independent Expert Witness

{¶ 31} West Main argues that the trial court's announcement of its intention to appoint an independent expert witness to provide information about the condition of the

---

[6] To be clear, we make no determination regarding whether the trial court abused its discretion in ordering West Main to shore up the Tavern Building. *See Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist.*, 73 Ohio St.3d 590, 604, 653 N.E.2d 646 (1995) ("The issue whether to grant or deny an injunction is a matter solely within the discretion of the trial court and a reviewing court should not disturb the judgment of the trial court in the absence of a clear abuse of discretion"). Our review is merely jurisdictional at this stage.

[7] A final consideration: Evil Empire argues that the shoring order is not final because it has filed administrative appeals from the CBO's June 20, 2023, certification that demolition of the Tavern Building is required by public safety because of an unsafe or dangerous condition. The argument is devoid of citation to any caselaw which would permit this court to tie our jurisdictional review of the trial court's June 23 Order to administrative proceedings which are not part of this case and, of which, we have no record.

Tavern Building at the parties' shared expense is a final order.[8] We disagree. First, the order on appeal does not actually appoint an expert witness. Second, even if this court construes West Main's appeal as a premature appeal from the trial court's announced decision appointing the expert,[9] we find that an order appointing an expert as a court's witness is interlocutory. "A trial court's authority to appoint expert witnesses is well recognized." 2 Giannelli, *Baldwin's Ohio Practice Evidence*, Section 702.7 (4th ed. 2022). Moreover, the Rules of Evidence provide that a trial court "may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." Evid.R. 614(A). We find that any issues regarding the appointment of an expert witness and the allocation of costs are amenable to appellate review after the trial court issues a final judgment on the merits. West Main has not carried its burden in proving that appeal after final judgment from this portion of the June 23 Order would not constitute meaningful or effective relief. Accordingly, we conclude that the trial court's order appointing an expert witness is not a final order.

### III. Conclusion

{¶ 32} For all the foregoing reasons, this court's July 5, 2023, show cause order in Miami County Appellate Case No. 2023-CA-19 is SATISFIED; however, the scope of this appeal is limited to review of the trial court's June 23, 2023, shoring order. Having found

---

[8] Troy's reply to West Main's show cause response takes no position on the finality of this portion of the June 23 Order. Evil Empire argues that the order is not final. The CBO supports West Main's position.

[9] We take judicial notice that the trial court appointed an expert witness on July 5, 2023. *See* App.R. 4(C) ("A notice of appeal filed after the announcement of a decision, order, or sentence but before entry of the judgment or order that begins the running of the appeal time is treated as filed immediately after the entry").

the show cause order satisfied, we also find that the July 24, 2023, show cause order in Miami County Appellate Case No. 2023-CA-22 is SATISFIED.

{¶ 33} In making this determination, we are mindful that a "trial court is divested of jurisdiction over matters that are inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment." *State ex rel. Electronic Classroom of Tomorrow v. Cuyahoga Cty. Court of Common Pleas*, 129 Ohio St.3d 30, 2011-Ohio-626, 950 N.E.2d 149, ¶ 13 (internal citation and quotations omitted). This principle holds true even in the context of interlocutory appeals of final orders. *State ex rel. Bohlen v. Halliday*, 164 Ohio St.3d 121, 2021-Ohio-194, 172 N.E.3d 114, ¶ 25. Nevertheless, the trial court does not lose all jurisdiction pending appeal. *In re S.J.*, 106 Ohio St.3d 11, 2005-Ohio-3215, 829 N.E.2d 1207, ¶ 9 ("The trial court retains jurisdiction over issues not inconsistent with the appellate court's jurisdiction to reverse, modify, or affirm the judgment appealed from"). Accordingly, this Order should not be interpreted as preventing the parties and their experts from providing the trial court with information regarding the condition of the Tavern Building or preventing the trial court from issuing orders that are consistent with its jurisdiction while this appeal is pending.

### IV. Consolidation

{¶ 34} It is ORDERED that Miami County Appellate Case Nos. 2023-CA-19 and 2023-CA-22, are consolidated for the purpose of appellate review. All future filings in this matter shall retain the caption as noted above and bear all case numbers. 116 West Main

LLC, Randy Kimmel, and Rob England, in his capacity as Chief Building Official for the Miami County Building Department, are designated as the appellants.

## V. **Stay**

**{¶ 35}** Because we have determined that the trial court's June 23 Order is a final order to the extent that it orders 116 West Main LLC to "take whatever steps necessary to shore-up the exterior brick wall on the north side of the third floor of the Tavern Building" on or before July 7, 2023, this court *sua sponte* reconsiders its July 7, 2023, "Order Overruling West Main and Kimmel's Emergency Motion to Stay Enforcement of Trial Orders" in Miami County Appellate Case No. 2023-CA-19.

**{¶ 36}** Upon reconsideration, we SUSTAIN West Main's motion, in part, and OVERRULE the motion in part. The trial court's order that 116 West Main LLC "take whatever steps necessary to shore-up the exterior brick wall on the north side of the third floor of the Tavern Building" on or before July 7, 2023, is STAYED pending resolution of this appeal. The trial court's orders enjoining the immediate demolition of the Tavern Building and announcing its intention to appoint an expert witness are not affected by our reconsideration of this matter.

**{¶ 37}** The CBO's August 2, 2023, motion to stay the June 23 Order in Miami County Appellate Case No. 2023-CA-22 is also SUSTAINED, in part, and OVERRULED, in part, to the same extent.

## VI. **Expedition**

**{¶ 38}** On July 12, 2023, West Main filed an "Application Requesting Accelerated Docket Review and Determination" in Miami County Appellate Case No. 2023-CA-19. On July 28, 2023, the CBO filed an identically styled application in Miami County Appellate

Case No. 2023-CA-22. The applications are SUSTAINED, in part, and OVERRULED, in part.

{¶ 39} Although this appeal will not be placed on the accelerated docket under App.R. 11.1, it shall be EXPEDITED in accordance with Loc.App.R. 2.8(B). This matter will be scheduled for this court's consideration at the earliest available date upon the completion of briefing. No extensions will be granted except upon the showing of extraordinary circumstances.

## VII.  Motion to Supplement the Record

{¶ 40} On August 2, 2023, West Main moved to supplement the record in Miami County Appellate Case No. 2023-CA-19 with additional docket entries in Miami County Common Pleas Court Case No. 23 CV 00109. The motion is SUSTAINED, in part, and OVERRULED, in part. The clerk of the trial court is ORDERED to prepare, assemble, and submit to the clerk of the court of appeals the following entries:

- Entry #42 – filed April 6, 2023 – Entry Scheduling a Hearing for April 18, 2023, at 8:30 AM

- Entry #103 – filed May 9, 2023 – Entry Scheduling a Status Conference for May 11, 2023, at 2:00 PM

- Entry #113 – filed May 17, 2023 – Subpoena to Rob England to Appear at Hearing

- Entry #117 – filed May 19, 2023 – Entry Scheduling a Hearing for May 24, 2023, at 8:30 AM.

The remainder of the material requested to be added to the record is material that was not part of the trial court proceedings when the trial court's June 23 Order was issued

and cannot be relied upon by this court to decide the appeal. *See State v. Ishmail*, 54 Ohio St.2d 402, 406, 377 N.E.2d 500 (1978). Upon the filing of the written transcripts and the submission of the summaries of the docket, journal entries and all original papers, the clerk of the court of appeals shall issue an amended App.R. 11(B) notice that the record is complete.

{¶ 41} Appellants shall file their briefs 20 days from the amended App.R. 11(B) notice, and this matter shall proceed in accordance with the Ohio Rules of Appellate Procedure.

## VIII.   Oral Argument

{¶ 42} West Main and the CBO have requested oral argument. Their requests are OVERRULED at this time. Oral argument shall be requested in accordance with App.R. 21.

{¶ 43} SO ORDERED.


_____
MICHAEL L. TUCKER, JUDGE


_____
CHRISTOPHER B. EPLEY, JUDGE


_____
RONALD C. LEWIS, JUDGE