[Cite as *Medpace, Inc. v. ICON Clinical Research, L.L.C.*, 2023-Ohio-4552.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| MEDPACE, INC., | : | APPEAL NO. C-230133<br>TRIAL NO. A-2102208 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | *O P I N I O N.* |
| | : | |
| ICON CLINICAL RESEARCH, LLC, | : | |
| DOCS GLOBAL, INC., | : | |
| CHRISTEN BELL, | : | |
| JAMIE PRUITT, | : | |
| STEPHANIE WILLIS, | : | |
| ROBERT ALEXANDER, | : | |
| DAVID CARPENTER, | : | |
| CAMERON JOHNSON, | : | |
| NARAYANA KOMARAVELLI, | : | |
| OLUBUSOLA OKUNNU, | : | |
| GRANT PIEPLES, | : | |
| SARAH STEELE, | : | |
| REGAN HITT, | : | |
| LINDSAY LUTSI, | : | |
| CHRISTINE TULISIAK, | : | |
| CORDILIA OBENG, | | |

                      :

   and

                      :

  KAYLEE C. BRILLHART,

     Defendants-Appellants.       :

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Appeal Dismissed

Date of Judgment Entry on Appeal: December 15, 2023

*Keating Muething & Klekamp PLLC*, *Michael L. Scheier*, *Jacob D. Rhode* and *Joseph B. Womick*, for Plaintiff-Appellee,

*Baker & Hostetler LLP*, *M. Scott McIntyre* and *Sean P. Ryan*, for Defendants-Appellants.

**BERGERON, Judge.**

{¶1} A spat between two companies over noncompete agreements with allegations about poaching employees resulted in litigation filed by plaintiff-appellee Medpace, Inc., seeking, among other things, a permanent injunction against defendants-appellants, ICON Clinical Research, LLC, DOCS Global, Inc., various adverse individual recruiters, and former Medpace employees (collectively, "Defendants"). As the case proceeded, the trial court entered an order barring Defendants from "hiring, soliciting, and/or recruiting Medpace Inc.'s employees" subject to active contractual noncompete restrictions. But the court failed to comply with any of the procedural requirements for injunctive relief under Civ.R. 65, and Medpace did not actually request a preliminary injunction. What to do in such circumstances? We conclude that the order, however it arose, constitutes a preliminary injunction. On Defendants' appeal of this order, it accordingly obliges us to consider our appellate jurisdiction. Consistent with our recent precedent in this area, we ultimately conclude that we lack jurisdiction over this appeal. Accordingly, we dismiss this appeal.

I.

{¶2} Medpace hires clinical research associates and other employees who receive proprietary training. As such, it requires its employees to sign a Proprietary Rights Agreement ("PRA") that includes noncompete and other restrictive covenants. Medpace alleges that former employees breached their PRAs at the behest of ICON, DOCS, and others, painting a scheme in which their recruiters tortiously interfered with these contracts by soliciting Medpace employees to work for competing

3

businesses, coaching them on how to best get out of their PRAs, and ultimately hiring them in violation of their PRAs.

**{¶3}** During a March 2022 hearing, Medpace produced evidence that (it claims) showed that, since the outset of the litigation, ICON and their recruiters continued to solicit and recruit Medpace employees. The trial court warned defense counsel that "I would suggest you tell your client * * * this is not an order of this Court, but they probably should not be getting in touch with Medpace employees currently because you've got this pending litigation." But the trial court issued no order, nor did Medpace seek injunctive relief.

**{¶4}** Nearly a year later, during a February 2023 status conference before the trial court on four motions unrelated to this appeal, Medpace tendered evidence that it claimed showed an ongoing pattern of improper solicitation of its employees, notwithstanding the trial court's prior admonishment. But despite these supposedly dire consequences, Medpace did not file any motion for a temporary restraining order or a preliminary injunction. Defendants protested that they had no opportunity to brief the "evidence" submitted, and highlighted the impropriety of tossing allegations like this around at a hearing without any sort of formal motion for relief.[1] Yet after its consideration of the evidence of the alleged ongoing solicitations during the pendency of the litigation, the trial court issued an oral order that ICON, DOCS, and their named recruiters "cease and desist contacting Medpace" until the litigation is resolved. The trial court warned: "if it is happening, hypothetically – hypothetically speaking, it better not happen again."

---

[1] We take no position on what this evidence shows or doesn't show since we resolve this appeal on jurisdictional grounds.

{¶5}   Two weeks after this hearing, Defendants sought reconsideration, requesting that the trial court reconsider its oral order because it amounted to a de facto preliminary injunction, and the court failed to follow the procedural requirements for issuing such an injunction.  But the trial court denied the motion.

{¶6}   Defendants then appealed the oral order, and Medpace moved to dismiss on the basis that oral pronouncements are not appealable.  Subsequently, this court remanded the matter to the trial court—requiring it to journalize the order—and stayed the appeal because we had no written order to review.  After our remand, Medpace tendered a proposed order for the trial court's consideration, and Defendants objected and submitted a competing proposed order.  Mirroring the language of Medpace's proposed order, the trial court entered the written order at issue.

{¶7}   After Defendants appealed this order, this court requested supplemental briefing on our jurisdiction, which both Medpace and Defendants provided.  Medpace argued that the order at issue is not a final appealable order and asked us to dismiss the appeal for a lack of jurisdiction, whereas Defendants (pointing to the First Amendment) assured us that jurisdiction was proper.  After reviewing this briefing, this court provisionally decided that the order appeared to be a final appealable order but indicated that the parties could revisit the issue in their merits briefing.

II.

{¶8}   In their sole assignment of error, Defendants contest the trial court's order, framing it as a prior restraint on First Amendment speech and a decision lacking reasonable notice as required by Civ.R. 65 and due process.  Defendants also criticize the trial court's failure to consider any of the Civ.R. 65 factors or the restrictive

5

covenant enforceability test under *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 325 N.E.2d 544 (1975).

A.

**{¶9}** But before we can assess any of this, we must consider the nature of the trial court's order. Defendants insist that, although the court labeled the order as a "cease and desist order" and the Civ.R. 65 requirements for issuing a preliminary injunction were not followed, it is tantamount to a preliminary injunction. We agree. When something looks like a duck and quacks like a duck, it usually *is* a duck. Invoking similar logic, courts have recognized that if an order functions as a preliminary injunction, it constitutes a preliminary injunction. *See, e.g.*, *England v. 116 W. Main LLC*, 2d Dist. Miami Nos. 2023-CA-19 and 2023-CA-22, 2023-Ohio-3086, ¶ 17 ("To determine the nature of the trial court's order, we review the substance and effect of the order. Although the trial court has denominated its order as a 'status order,' this language is not dispositive."). And an order functions as a preliminary injunction when it " 'preserves the status quo by enjoining a defendant from performing the challenged acts in the future.' " *Id.*, quoting *Heartland of Urbana OH, LLC. v. McHugh Fuller Law Group, PLLC*, 2016-Ohio-6959, 72 N.E.3d 23, ¶ 87 (2d Dist.).

**{¶10}** The order at issue provides, in pertinent part: "While this litigation is pending, Defendants are hereby ordered to cease and desist hiring, soliciting, and/or recruiting Medpace, Inc's employees who are subject to active proprietary rights agreements and/or restrictive covenants prohibiting employment with Medpace's competitors and restricted businesses." However denominated, the order effectively operates as a preliminary injunction—it enjoins Defendants from performing the

6

challenged acts during the pendency of the litigation. Given these specific circumstances, we must analyze the order as a preliminary injunction.

B.

{¶11} That threshold determination, however, begs a jurisdictional inquiry. Appellate courts are courts of limited jurisdiction, and we must respect the constraints imposed on our jurisdiction by the state constitution and statutes. Article IV, Section 3(B)(2) of the Ohio Constitution grants appellate courts jurisdiction to "review and affirm, modify, or reverse * * * final orders of the courts of record inferior to the court of appeals within the district." If a trial court order " 'is not final, then an appellate court does not have jurisdiction to review the matter, and the matter must be dismissed.' " *Preterm-Cleveland v. Yost*, 1st Dist. Hamilton No. C-220504, 2022-Ohio-4540, ¶ 9, *appeal allowed*, 169 Ohio St.3d 1457, 2023-Ohio-758, 204 N.E.3d 564, quoting *Taxiputinbay, LLC v. Village of Put-In-Bay*, 6th Dist. Ottawa No. OT-20-021, 2021-Ohio-191, ¶ 7.

{¶12} Defendants—citing *Natl. Socialist Party of Am. v. Skokie*, 432 U.S. 43, 97 S.Ct. 2205, 53 L.Ed.2d 96 (1977)—argue that all prior restraints on First Amendment speech constitute final appealable orders under Ohio law. In *Skokie*, the United States Supreme Court considered an Illinois Supreme Court decision denying a stay of a preliminary injunction prohibiting, in part, Nazi demonstrators from "marching, walking or parading or otherwise displaying the swastika on or off their person." *Id.* at 43. Because the preliminary injunction deprived the Nazi Party of protected First Amendment rights, the Court determined that Illinois must have either "provide[d] strict procedural safeguards * * * including intermediate appellate review" or, "[a]bsent such review, * * * allow[ed] a stay." *Id.* at 44. Relying on this case,

Defendants posit that any intrusion on such sacred First Amendment protections demands immediate appellate scrutiny.

**{¶13}** The basic prior restraint doctrine is fairly well-established: "A prior restraint is any law, administrative order, or judicial order that forbids protected speech in advance." *Ostergren v. Frick*, 856 Fed.Appx. 562, 568 (6th Cir.2021), citing *Schmitt v. LaRose*, 933 F.3d 628, 637-638 (6th Cir.2019); *Novak v. City of Parma*, 932 F.3d 421, 432 (6th Cir.2019). For core political speech such as that at issue in *Skokie*, the prior restraint doctrine functions in a predictable manner.

**{¶14}** But that robust protection sputters in cases, like this one, involving *commercial* speech. "Hiring, soliciting, and/or recruiting" are "no more than [proposals] of possible employment" and are "classic examples of commercial speech." *Pittsburgh Press Co. v. Pittsburgh Comm. on Human Relations*, 413 U.S. 376, 385, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973); *see Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 112 (2d Cir.2017) ("The district court correctly concluded that, because the Ordinance restricts speech only if it constitutes soliciting of employment, the speech targeted by the Ordinance is commercial speech.").

**{¶15}** Building on this distinction, this court has recognized that restrictions that target commercial speech receive lesser protection than other constitutionally-protected speech. *See, e.g., City of Cincinnati v. Fourth Natl. Realty, LLC*, 2023-Ohio-1012, 214 N.E.3d 1, ¶ 22 (1st Dist.) ("And it is well-settled that commercial-speech restrictions receive a lesser form of scrutiny, and courts 'distinguish commercial speech from speech at the First Amendment's core.' " (quoting *Florida Bar v. Went for It*, 515 U.S. 618, 623, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995))). And the Sixth Circuit

recently suggested that the prior restraint doctrine does not even apply to commercial speech. *See Kenjoh Outdoor, LLC v. Marchbanks*, 23 F.4th 686, 694 (6th Cir.2022) ("If anything, we have strongly suggested that prior restraint never applies to commercial speech."). We need not go that far at this point, but certainly the prior restraint doctrine is at a minimum seriously diluted in cases involving commercial speech.

{¶16} This noncompete dispute provides a great illustration as to why. Every run-of-the-mill tortious interference case between competing businesses would suddenly assume constitutional magnitude. No court could stop a business from improperly interfering with the counter-party's employees without tripping over the First Amendment. That is certainly not the way that garden-variety business tort cases have been historically litigated in Ohio courts.

{¶17} Defendants protest, however, that the order is so vague that it potentially applies to both commercial and noncommercial speech. In this vein, they allege that the order "chills any Individual Appellant simply expressing positive views of the Corporate Appellants or their work to a friend or loved one." We find that view of the order difficult to square with its text. Appreciating the full context of the order, it does not prohibit casual conversation among friends; it applies only to efforts "hiring, soliciting, and/or recruiting" Medpace employees subject to the noncompetition agreements at issue in the underlying tortious interference claim. This is pure commercial speech.

{¶18} As a fallback, Defendants insist that the prior restraint doctrine applies to commercial speech and secures immediate appellate review, citing *Connor Group v. Raney*, 2d Dist. Montgomery No. 26653, 2016-Ohio-2959. In *Raney*, the court

concluded that a preliminary injunction constituted a prior restraint on speech (and was thus final and appealable), even though it later deemed the speech commercial. *Id.* at ¶ 1, 63. But courts have traditionally determined injunctions in defamation claims—the underlying claim at issue in *Raney*—are prior restraints. *See, e.g., CBS v. Davis*, 510 U.S. 1315, 1318, 114 S.Ct. 912, 127 L.Ed.2d 358 (1994) ("Subsequent civil or criminal proceedings, rather than prior restraints, ordinarily are the appropriate sanction for calculated defamation or other misdeeds in the First Amendment context."). There is no such history finding that preliminary injunctions in prototypical commercial disputes involving noncompete agreements constitute prior restraints.

{¶19} As we read the controlling statute, R.C. 2505.02, we see no exception that would allow alleged prior restraints of commercial speech to bypass the statutory requirements for appellate jurisdiction. Nor are we aware of any Ohio case that treats the stifling of some commercial "speech" in a noncompete dispute as a prior restraint that enjoys immediate appellate review.

{¶20} Consequently, we must proceed with the analysis governed by R.C. 2505.02(B) to determine whether the preliminary injunction at issue constitutes a final appealable order.

C.

{¶21} Defendants first assert the order "affects a substantial right," ostensibly indicating that the order may be final under R.C. 2505.02(B)(2). But that basis for finality is reserved for orders "made in a special proceeding or upon a summary application in an action after judgment." The order at hand was issued

during a common law tort dispute (not a special proceeding), so R.C. 2505.02(B)(2) is not applicable.

{¶22} Rather, because the order grants a provisional remedy (a preliminary injunction, *see* R.C. 2505.02(A)(3)), the relevant subsection of R.C. 2505.02 at issue is R.C. 2505.02(B)(4) which provides:

(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

* * *

(4) An order that grants or denies a provisional remedy and to which both of the following apply:

(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

{¶23} A preliminary injunction "must [] satisfy both prongs of R.C. 2505.02(B)(4) to constitute a final appealable order." *Preterm-Cleveland*, 1st Dist. Hamilton No. C-220504, 2022-Ohio-4540, at ¶ 12, citing *State v. Muncie*, 91 Ohio St.3d 440, 450-452, 746 N.E.2d 1092 (2001). For an order to be deemed final under R.C. 2505.02(B)(4), "[t]he first prong requires that the order effectively determines the action with respect to the provisional remedy and prevents a judgment in favor of the appealing party with respect to the provisional remedy." *Id*. at ¶ 13, citing R.C. 2505.02(B)(4)(a). As this court noted in *Preterm-Cleveland*, the Ohio Supreme Court

11

has explained that an order satisfies the first prong if " 'there existed nothing further for the trial court to decide with respect to the provisional remedy.' " *Id.* at ¶ 13, quoting *In re Special Docket No. 73958*, 115 Ohio St.3d 425, 2007-Ohio-5268, 875 N.E.2d 596, ¶ 29.

{¶24} Here, the trial court expressly reserved the right to amend the order as discovery progresses and upon the presentation of evidence at trial. But "a trial court generally retains the ability to revisit interlocutory rulings." *Id.* at ¶ 14. And like the trial court in *Preterm-Cleveland*, the trial court here "gave no indication that its decision was tentative or contingent in any manner." *Id.* Far from it—it entered the order after we indicated that the court needed to memorialize a written order so that we could properly assess jurisdiction. Accordingly, we conclude that the order at hand satisfies this requirement, so we proceed to the next prong of the R.C. 2505.02(B)(4) analysis.

{¶25} "To satisfy the second prong of R.C. 2505.02(B)(4), the appealing party must show that, if it cannot appeal now, it will be deprived of 'a meaningful or effective remedy' if it must await 'an appeal following final judgment as to all proceedings.' " *Id.* at ¶ 15, quoting R.C. 2505.02(B)(4)(b). While there are different strands of Ohio caselaw that address this requirement, Defendants first focus their argument on the line of cases illustrating the "unringing" of the bell concept. *See id.* at ¶ 17.

{¶26} Courts have recognized that an order may be final and appealable if "the proverbial bell cannot be unrung." *Muncie*, 91 Ohio St.3d at 451, 746 N.E.2d 1092. But Ohio courts have generally limited this inquiry to "situations that would irreparably change the party's position between provisional remedy and final judgment." *Preterm-Cleveland*, 1st Dist. Hamilton No. C-220504, 2022-Ohio-4540,

at ¶ 24. These cases tend to involve "information which, once disclosed would be 'irretrievably lost,' " *id.*, quoting *Cleveland Clinic Found. v. Levin*, 120 Ohio St.3d 1210, 2008-Ohio-6197, 898 N.E.2d 589, ¶ 13, or " 'particularly severe' interferences with an individual's liberty interest," *id.*, quoting *Muncie* at 452. Ohio courts have found this inquiry to be applicable in cases involving the divulgence of confidential or privileged information, *Cleveland Clinic Found.*, the forced administration of medication, *Muncie*, and cases implicating the right against double jeopardy, *State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542, 6 N.E.3d 23, ¶ 53-59.

{¶27} Defendants' alleged harm falls outside the scope of this inquiry. While they insist that the trial court's order prevents people from seeking greener employment pastures elsewhere, the individuals at hand all signed noncompetition agreements and any restriction on their ability to consider other employment is temporary in nature. Nothing irretrievable will be lost, nor will anything irreversible transpire. Yes, if the preliminary injunction is ultimately reversed, certain parties will be negatively impacted during the period between the preliminary injunction and appellate vindication. But this is the case with any preliminary injunction (which is exactly why courts impose bond requirements). Therefore, this strand of Ohio caselaw does not provide a pathway to immediate appellate review.

{¶28} Turning to a second strand of Ohio caselaw, Defendants argue that they will be deprived of a meaningful or effective remedy because the preliminary injunction alters the status quo. Ohio courts have found that " 'a preliminary injunction which acts to maintain the status quo pending a ruling on the merits is not a final appealable order under R.C. 2505.02.' " *Preterm-Cleveland* at ¶ 21, quoting *Quinlivan v. H.E.A.T. Total Facility Solutions, Inc.*, 6th Dist. Lucas No. L-10-1058,

2010-Ohio-1603, ¶ 5. "In the context of preliminary injunctions, various Ohio appellate districts have defined 'status quo' as the 'last, actual, peaceable, uncontested status which preceded the pending controversy.' " *Id.*, quoting *Taxiputinbay*, 6th Dist. Ottawa No. OT-20-021, 2021-Ohio-191, at ¶ 17. Generally, Ohio courts do not permit appellate review of preliminary injunctions preserving the status quo because "the aggrieved party will have an opportunity to obtain its 'meaningful or effective remedy' if a permanent injunction is issued." *Id.* at ¶ 22.

{¶29} An order maintaining the status quo returns the parties to their last legally uncontested status. Here, Medpace claims that Defendants are tortiously interfering with its contractual and business relationships by coaching its employees on how to breach their contractual obligations to Medpace (among other things). Therefore, the order returns the parties to the status quo by preventing Defendants from "hiring, soliciting, and/or recruiting Medpace Inc.'s employees" subject to active noncompete obligations. The trial court likewise described its order as "intended to maintain the status quo among the parties during the pendency of this litigation." Although the trial court's label is not dispositive, we agree that the function of this preliminary injunction is to maintain the status quo, which further militates against a conclusion that the order is final and appealable.

{¶30} Defendants also assert that because the order at issue is "broader" than the permanent injunction Medpace seeks, they would not have a meaningful and effective remedy following final judgment. Generally, Ohio courts "hold that the second prong of R.C. 2505.02(B)(4) cannot be met when the provisional remedy is a preliminary injunction and the ultimate relief sought in the lawsuit is a permanent injunction.' " *Preterm-Cleveland*, 1st Dist. Hamilton No. C-220504, 2022-Ohio-4540,

14

at ¶ 18, quoting *Clean Energy Future, LLC v. Clean Energy Future-Lordstown, LLC*, 11th Dist. Trumbull No. 2017-T-0110, 2017-Ohio-9350, ¶ 7. Here, while the trial court granted a preliminary injunction enjoining Defendants from "hiring, soliciting, and/or recruiting Medpace, Inc.'s employees who are subject to active proprietary rights agreements and/or restrictive covenants," Medpace ultimately seeks relief in the form of a permanent injunction enjoining Defendants from "violating the restrictive covenants contained in the Agreements and/or interfering with the contractual obligations of the Former Employees and any other Medpace employees" and from "further tortiously interfering with Medpace's contractual or business relationships." And in its complaint, Medpace defines the tortious interference as "employing, * * * solicit[ing], and recruit[ing]" Medpace employees subject to restrictive covenants. As we see it, Medpace's permanent injunction request seeks to enjoin the same acts as the preliminary injunction. Consequently, the ultimate form of relief sought by Medpace indicates that the order is not suitable for our immediate review.

**{¶31}** Defendants argue, and this court may ultimately agree, that the trial court failed to meet the procedural requirements of Civ.R. 65 by attempting to disguise a preliminary injunction as a cease-and-desist order. Nearly every time a party seeks to appeal, they are convinced that the trial court committed a serious error. But any purported disregard for the proper procedure for issuing a preliminary injunction does not expand this court's jurisdiction beyond its constitutional and statutory boundaries.

**{¶32}** In this case, the trial court issued a preliminary injunction to preserve the contractual rights of the party who argued that its rights were infringed upon during the pendency of the litigation. Upon a decision on the permanent injunction,

15

any aggrieved party will enjoy the right to appeal, and Defendants fail to demonstrate that they will be deprived of a meaningful or effective remedy if they cannot appeal now. As such, we agree the order at issue is not a final appealable order.

**{¶33}** Accordingly, we hold that the trial court's order does not satisfy the requirements of a final appealable order under R.C. 2505.02(B)(4).

\* \* \*

**{¶34}** We can certainly understand Defendants' frustration with this result—they simply want this case decided on the merits. That day will have to wait, much like we recognized in *Preterm-Cleveland*. For better or worse, we cannot expand our jurisdiction simply to accommodate the desires of a particular party, regardless of the fairness of the litigation obstacles erected in their path. Therefore, in light of the foregoing analysis, we must dismiss this appeal for a lack of a final appealable order.

Appeal dismissed.

**CROUSE, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.